FILED
2019 Oct-22  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT B



# ALABAMA SJIS CASE DETAIL

**PREPARED FOR: JESSICA ATKINSON**

County: **01**   Case Number: **CV-2019-904168.00**   Court Action:

Style: **WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL**

**Real Time**

## Case

### Case Information

| | | | | |
|---|---|---|---|---|
| County: | **01-JEFFERSON - BIRMINGHAM** | Case Number: | **CV-2019-904168.00** | Judge: **RSV:ROBERT S. VANCE** |
| Style: | **WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL** | | | |
| Filed: | **09/16/2019** | Case Status: | **ACTIVE** | Case Type: **CONTRACT/EJMNT/SEIZU** |
| Trial Type: | **JURY** | Track: | | Appellate Case: **0** |
| No of Plaintiffs: **1** | | No of Defendants: **2** | | |

### Damages

| | | | | |
|---|---|---|---|---|
| Damage Amt: | **0.00** | Punitive Damages: | **0.00** | General Damages: **0.00** |
| No Damages: | | Compensatory Damages: | **0.00** | |
| Pay To: | | Payment Frequency: | | Cost Paid By: |

### Court Action

| | | | |
|---|---|---|---|
| Court Action Code: | | Court Action Desc: | Court Action Date: |
| Num of Trial days: | **0** | Num of Liens: **0** | Judgment For: |
| Dispositon Date of Appeal: | | Disposition Judge: : | Disposition Type: |
| Revised Judgement Date: | | Minstral: | Appeal Date: |
| Date Trial Began but No Verdict (TBNV1): | | | |
| Date Trial Began but No Verdict (TBNV2): | | | |

### Comments

Comment 1:

Comment 2:

### Appeal Information

| | | |
|---|---|---|
| Appeal Date: | Appeal Case Number: | Appeal Court: |
| Appeal Status: | Orgin Of Appeal: | |
| Appeal To: | Appeal To Desc: | LowerCourt Appeal Date: |
| Disposition Date Of Appeal: | | |
| | Disposition Type Of Appeal: | |

### Administrative Information

| | | |
|---|---|---|
| Transfer to Admin Doc Date: | Transfer Reason: | Transfer Desc: |
| Number of Subponeas: | Last Update: **09/16/2019** | Updated By: **AJA** |

## Parties

### Party 1 - Plaintiff INDIVIDUAL - PHILLIPS WALKER T.

#### Party Information

| | | | | | |
|---|---|---|---|---|---|
| Party: | **C001-Plaintiff** | Name: | **PHILLIPS WALKER T.** | Type: | **I-INDIVIDUAL** |
| Index: | **D GARRISON PRO** | Alt Name: | | Hardship: **No** | JID: **RSV** |
| Address 1: | **2001 PARK PLACE** | | | Phone: **(205) 000-0000** | |

Address 2: **SUITE 900**
City: **BIRMINGHAM**  State: **AL**  Zip: **35203-0000**  Country: **US**
SSN: **XXX-XX-X999**  DOB:  Sex:  Race:

## Court Action

Court Action:  Court Action Date:
Amount of Judgement: **$0.00**  Court Action For:  Exemptions:
Cost Against Party: **$0.00**  Other Cost: **$0.00**  Date Satisfied:
Comment:  Arrest Date:
Warrant Action Date:  Warrant Action Status:  Status Description:

## Service Information

Issued:  Issued Type:  Reissue:  Reissue Type:
Return:  Return Type:  Return:  Return Type:
Served:  Service Type  Service On:  Served By:
Answer:  Answer Type:  Notice of No Service:  Notice of No Answer:

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | WAL073 | | WALLER JONATHAN HIETT | JWALLER@WALLER-LAW.COM | (205) 313-7330 |

## Party 2 - Defendant BUSINESS - GARRISON PROPERTY & CASUALTY INSURANCE

### Party Information

Party: **D001-Defendant**  Name: **GARRISON PROPERTY & CASUALTY INSURANCE**  Type: **B-BUSINESS**
Index: **C PHILLIPS WAL**  Alt Name:  Hardship: **No**  JID: **RSV**
Address 1: **9800 FREDERICKSBURG ROAD**  Phone: **(205) 000-0000**
Address 2:
City: **SAN ANTONIO**  State: **TX**  Zip: **78288-0000**  Country: **US**
SSN: **XXX-XX-X999**  DOB:  Sex:  Race:

## Court Action

Court Action:  Court Action Date:
Amount of Judgement: **$0.00**  Court Action For:  Exemptions:
Cost Against Party: **$0.00**  Other Cost: **$0.00**  Date Satisfied:
Comment:  Arrest Date:
Warrant Action Date:  Warrant Action Status:  Status Description:

## Service Information

Issued: **09/18/2019**  Issued Type: **C-CERTIFIED MAIL**  Reissue:  Reissue Type:
Return:  Return Type:  Return:  Return Type:
Served: **09/23/2019**  Service Type **C-CERTIFIED MAIL**  Service On:  Served By:
Answer:  Answer Type:  Notice of No Service:  Notice of No Answer:

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|--------|---------------|-----------------|------|-------|-------|
| Attorney 1 | 000000 | | PRO SE | | |

## Party 3 - Defendant BUSINESS - CCC INFORMATION SERVICES, INC.

### Party Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Party: | D002-Defendant | Name: | CCC INFORMATION SERVICES, INC. | | | Type: | B-BUSINESS |
| Index: | C PHILLIPS WAL | Alt Name: | | | | JID: | RSV |
| Address 1: | 222 MERCHANDISE MART PLAZ | | | Hardship: | No | | |
| | | | | Phone: | (205) 000-0000 | | |
| Address 2: | | | | | | | |
| City: | CHICAGO | State: | IL | Zip: | 60654-0000 | Country: | US |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | | Race: | |

### Court Action

| | | | | | |
|---|---|---|---|---|---|
| Court Action: | | | | Court Action Date: | |
| Amount of Judgement: | $0.00 | Court Action For: | | Exemptions: | |
| Cost Against Party: | $0.00 | Other Cost: | $0.00 | Date Satisfied: | |
| Comment: | | | | Arrest Date: | |
| Warrant Action Date: | | Warrant Action Status: | | Status Description: | |

### Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | 09/18/2019 | Issued Type: | C-CERTIFIED MAIL | Reissue: | Reissue Type: |
| Return: | | Return Type: | | Return: | Return Type: |
| Served: | 09/30/2019 | Service Type | C-CERTIFIED MAIL | Service On: | Served By: |
| Answer: | | Answer Type: | | Notice of No Service: | Notice of No Answer: |

### Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|--------|---------------|-----------------|------|-------|-------|
| Attorney 1 | 000000 | | PRO SE | | |

## Financial

### Fee Sheet

| Fee Status | Admin Fee | Fee Code | Payor | Payee | Amount Due | Amount Paid | Balance | Amount Hold | Garnish Party |
|-----------|-----------|----------|-------|-------|-----------|-------------|---------|-------------|---------------|
| ACTIVE | N | AOCC | C001 | 000 | $32.45 | $32.45 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CONV | C001 | 000 | $0.00 | $19.39 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CV05 | C001 | 000 | $306.00 | $306.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | JDMD | C001 | 000 | $100.00 | $100.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | VADM | C001 | 000 | $45.00 | $45.00 | $0.00 | $0.00 | 0 |
| | | | | Total: | $483.45 | $502.84 | -$19.39 | $0.00 | |

### Financial History

| Transaction Date | Description | Disbursement Accoun | Transaction Batch | Receipt Number | Amount | From Party | To Party | Money Type | Admin Fee | Reason | Attorney | Operator |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/16/2019 | CREDIT | CONV | 2019246 | 628730 | $19.39 | C001 | 000 | | N | | | DOG |
| 09/16/2019 | RECEIPT | AOCC | 2019246 | 628720 | $32.45 | C001 | 000 | | N | | | DOG |
| 09/16/2019 | RECEIPT | CV05 | 2019246 | 628740 | $306.00 | C001 | 000 | | N | | | DOG |
| 09/16/2019 | RECEIPT | JDMD | 2019246 | 628750 | $100.00 | C001 | 000 | | N | | | DOG |
| 09/16/2019 | RECEIPT | VADM | 2019246 | 628760 | $45.00 | C001 | 000 | | N | | | DOG |

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 9/16/2019 | 10:18 AM | ECOMP | COMPLAINT E-FILED. | WAL073 |
| 9/16/2019 | 10:18 AM | FILE | FILED THIS DATE: 09/16/2019          (AV01) | AJA |
| 9/16/2019 | 10:18 AM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 9/16/2019 | 10:18 AM | ASSJ | ASSIGNED TO JUDGE: ROBERT S. VANCE          (AV01) | AJA |
| 9/16/2019 | 10:18 AM | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 9/16/2019 | 10:18 AM | TDMJ | JURY TRIAL REQUESTED          (AV01) | AJA |
| 9/16/2019 | 10:18 AM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 9/16/2019 | 10:18 AM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 9/16/2019 | 10:18 AM | C001 | C001 PARTY ADDED: PHILLIPS WALKER T.          (AV02) | AJA |
| 9/16/2019 | 10:18 AM | C001 | C001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/16/2019 | 10:19 AM | C001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/16/2019 | 10:19 AM | C001 | LISTED AS ATTORNEY FOR C001: WALLER JONATHAN HIET | AJA |
| 9/16/2019 | 10:19 AM | D001 | D001 PARTY ADDED: GARRISON PROPERTY & CASUALTY INS | AJA |
| 9/16/2019 | 10:19 AM | D001 | D001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/16/2019 | 10:19 AM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 9/16/2019 | 10:19 AM | D001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/16/2019 | 10:19 AM | D001 | CERTIFIED MAI ISSUED: 09/16/2019 TO D001   (AV02) | AJA |
| 9/16/2019 | 10:19 AM | D002 | D002 PARTY ADDED: CCC INFORMATION SERVICES, INC. | AJA |
| 9/16/2019 | 10:19 AM | D002 | CERTIFIED MAI ISSUED: 09/16/2019 TO D002   (AV02) | AJA |
| 9/16/2019 | 10:19 AM | D002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/16/2019 | 10:19 AM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE          (AV02) | AJA |
| 9/16/2019 | 10:19 AM | D002 | D002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/17/2019 | 3:55 PM | D001 | CERTIFIED MAI ISSUED: 09/18/2019 TO D001   (AV02) | ELN |
| 9/17/2019 | 3:55 PM | D002 | CERTIFIED MAI ISSUED: 09/18/2019 TO D002   (AV02) | ELN |
| 9/17/2019 | 4:08 PM | ESCAN | SCAN - FILED 9/16/2019 - NOTICE | ELN |
| 10/3/2019 | 10:25 AM | D001 | SERVICE OF CERTIFIED MAI ON 09/23/2019 FOR D001 | ROD |
| 10/3/2019 | 10:27 AM | ESERC | SERVICE RETURN | ROD |
| 10/4/2019 | 2:50 PM | D002 | SERVICE OF CERTIFIED MAI ON 09/30/2019 FOR D002 | ROD |
| 10/4/2019 | 2:52 PM | ESERC | SERVICE RETURN | ROD |

## Images

| Date: | Doc# | Title | Description | Pages |
|---|---|---|---|---|
| 9/16/2019 10:20:00 AM | 1 | CIVIL_COVER_SHEET | CIRCUIT COURT - CIVIL CASE | 1 |
| 9/16/2019 10:20:00 AM | 2 | COMPLAINT | | 27 |
| 9/16/2019 10:20:00 AM | 3 | SUPPORTING DOCUMENT | EXHIBIT A | 55 |
| 9/16/2019 10:20:00 AM | 4 | SUPPORTING DOCUMENT | EXHIBIT B | 24 |
| 9/16/2019 10:20:00 AM | 5 | SUPPORTING DOCUMENT | EXHIBIT C | 20 |
| 9/16/2019 10:20:43 AM | 6 | COMPLAINT - TRANSMITTAL | E-NOTICE TRANSMITTALS | 3 |
| 9/16/2019 10:20:44 AM | 7 | COMPLAINT - SUMMONS | E-NOTICE TRANSMITTALS | 2 |
| 9/17/2019 4:08:54 PM | 8 | NOTICE | S\C | 3 |
| 10/3/2019 10:27:13 AM | 9 | SERVICE RETURN | SERVICE RETURN | 2 |
| 10/3/2019 10:27:19 AM | 10 | SERVICE RETURN - TRANSMITTAL | E-NOTICE TRANSMITTALS | 1 |
| 10/4/2019 2:52:46 PM | 12 | SERVICE RETURN - TRANSMITTAL | E-NOTICE TRANSMITTALS | 1 |

**END OF THE REPORT**

ELECTRONICALLY FILED
9/16/2019 10:18 AM
01-CV-2019-904168.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev. 9/18 | **COVER SHEET<br>CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Cas<br>01<br>Date of Filing:    Judge Code:<br>09/16/2019 |
|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### WALKER T. PHILLIPS v. GARRISON PROPERTY & CASUALTY INSURANCE ET AL

**First Plaintiff:** ☐ Business  ☑ Individual    **First Defendant:** ☑ Business  ☐ Individual
☐ Government  ☐ Other    ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other:_____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☑ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER

R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO    **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**    ☑ MONETARY AWARD REQUESTED  ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
WAL073    9/16/2019 10:18:40 AM    /s/ JONATHAN HIETT WALLER
Date    Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**    ☐ YES ☐ NO ☑ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**  ☐ YES ☑ NO



ELECTRONICALLY FILED
9/16/2019 10:18 AM
01-CV-2019-904168.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

## IN THE CIRCUIT COURT OF
## JEFFERSON COUNTY, OF ALABAMA

WALKER T. PHILIPS, Individually, and on )
Behalf of All Others Similarly Situated, )
                                        )   Case No.: _____
        Plaintiff,                      )
                                        )
v.                                      )
                                        )   CLASS REPRESENTATION
GARRISON PROPERTY & CASUALTY, a         )
UNITED SERVICES AUTOMOBILE              )   **JURY TRIAL DEMANDED**
ASSOCIATION Subsidiary, and CCC         )
INFORMATION SERVICES, INC.,             )
                                        )
        Defendants.                     )

### CLASS ACTION COMPLAINT

Plaintiff Walker T. Philips, Individually, and on Behalf of all Others Similarly Situated

("Plaintiff"), by and through the undersigned counsel of record, files this Class Action Complaint

against Defendants, Garrison Property & Casualty ("Garrison"), a United Services Automobile

Association ("USAA") Subsidiary and CCC Information Services, Inc. ("CCC") (collectively,

"Defendants"), and states:

### NATURE OF THE ACTION

1.      This Alabama class action arises from Defendants' systemic and intentionally

wrongful under-valuation of total losses involving the vehicles of Garrison first party insureds.

2.      Garrison and non-party USAA have spent tens of millions of dollars to market

USAA and its subsidiaries as fair and honest insurance companies. However, Garrison is not fair

and honest in providing valuations to Garrison insureds whose vehicles have been involved in an

accident and are determined to be a total loss.  In fact, USAA, its subsidiaries and affiliated

Jefferson County insurance companies have literally saved hundreds of millions of dollars

throughout the United States as a result of the scheme and company with Defendant CCC to intentionally underpay first party total loss claims.  This scheme which invites taking several hundred or a thousand dollars from thousands of individual insureds, of which sums are too small to individually justify filing suit, presents a classic case suitable for this class action.

3.      Through its auto insurance policy contracts, Garrison has agreed to provide, *inter alia*, collision coverage for losses resulting from damage to insureds' vehicles.  When the costs of repairs exceed a specified percentage of the vehicle's value, Garrison declares the vehicle a total loss and must fairly adjust that total loss claim by properly valuing the insured vehicle.

4.      Garrison has contracted with CCC to receive Market Valuation Reports ("CCC Reports") to purportedly calculate, either directly or through its parent, USAA, the "Base Vehicle Value" of a total loss vehicle and the "Adjusted Vehicle Value" after any "Condition Adjustment" and applicable deductible.  Through this agreement with CCC, Garrison and CCC have engaged in a scheme to artificially deflate the value of total loss claims with the specific intent to pay first party insureds less than the actual pre-loss value of total loss vehicles by making improper downward Condition Adjustments.

5.      Plaintiff and the putative Class are Garrison automobile insurance policy holders whose vehicles Garrison determined to be a total loss, and who have been subject to Garrison and CCC's scheme to artificially deflate the value of their total loss claims by making such improper downward Condition Adjustments.

6.      When it entered into the Policies at issue in this case with Plaintiff and Class Members, Garrison was aware, but failed to disclose to Plaintiff and the Class, that CCC's Reports would wrongfully undervalue total loss vehicles and that Garrison would intentionally underpay total loss claims based on the CCC Reports. Through this scheme, Garrison and CCC have engaged

in unlawful conduct in violation of Alabama law, and their respective contractual obligations and have thereby uniformly damaged Garrison insureds in Alabama in a readily ascertainable dollar amount.

## PARTIES, JURISDICTION AND VENUE

7.      Plaintiff Walker T. Philips is an adult citizen of Birmingham, Alabama.

8.      Plaintiff brings this action in his individual capacity and on behalf of the Class of all other persons similarly situated in the state of Alabama.

9.      Defendant Garrison Property & Casualty is a foreign corporation incorporated under the laws of the state of Texas with its principal place of business in Antonio, Texas.

10.     Garrison issued automobile liability insurance Policies, including coverage for property damage and first-party total loss claims, to Plaintiff and Class Members, in Alabama. Garrison and CCC do business in Jefferson County, Alabama.  Garrison is subject to general and specific jurisdiction in Alabama and has committed the wrongful acts alleged in this action in Jefferson County, Alabama.  Garrison and CCC are subject to both general and specific jurisdiction in the Circuit Court of Jefferson County, Alabama. Venue is proper in this Court.

11.     Defendant CCC Information Services, Inc. is a foreign corporation operating under the laws of the state of Illinois with its principal place of business in Chicago, Illinois.  CCC has entered into a contract with Garrison to prepare and provide all Garrison total loss insureds with purported valuations for total loss vehicles in the form of CCC Reports throughout the class period.

12.     CCC has received very substantial payments from Garrison for total loss vehicle valuations.

13.     CCC has provided thousands of total loss valuations for Garrison insureds in Alabama.  CCC also provides CCC total loss valuations for thousands of Alabama insureds of

other insurance companies.  CCC has engaged in the total loss valuation business in Alabama and has committed tortious acts in Alabama, as alleged herein.   CCC is subject to general and specific jurisdiction under the Alabama Long-Arm Statute, Ala.R.Civ.P. 42.

## GENERAL FACTUAL ALLEGATIONS

### A.   Plaintiff's Garrison Policy

14.    Plaintiff Walker T. Philips was the owner of a 2013 Jeep Grand Cherokee Limited (the "Vehicle").

15.    Garrison issued its Automobile Policy No. 035577689R71019 (the "Policy") to Plaintiff which insured the Vehicle. That Policy was in effect in May, 2019.

16.    Following an automobile accident on May 19, 2019, Garrison determined that Plaintiff's Vehicle was a total loss.

17.    The terms of Garrison's Policy issued to Plaintiff are not individualized, unique or specific to Mr. Philips.  Plaintiff's Policy is the same standard form issued by Garrison to insureds throughout the state of Alabama.

18.    Specifically, Part D of the Policy, relating to physical damage to the insured vehicle, provides for "Limits of Liability."  See Garrison's Standard Automobile Policy, attached and incorporated herein as Exhibit A.

19.    The "Limits of Liability" section provides that, in the case of a total loss, Garrison's limit of liability is "actual cash value of the vehicle, inclusive of any custom equipment." ("Actual Cash Value").  Thus, Garrison is required to pay Plaintiff such Actual Cash Value.  (Exhibit A, p. 17).

20.     CCC provided Garrison with a CCC Market Valuation Report for Plaintiff's Vehicle on or about May 23, 2019 ("First CCC Report").  CCC Reports are discussed in detail in Section B, immediately below.

21.     The First CCC Report purports to state a Base Vehicle Value of $16,404.00 and an Adjusted Vehicle Value of $16,556.00, after a positive or upward Condition Adjustment in the amount of $152.00. Garrison then added vehicular tax for a "Total" of $17,280.33.  A true and correct copy of the First CCC Report is attached and incorporated herein as Exhibit B.

22.     CCC then provided Garrison with a second CCC Market Valuation Report for Plaintiff's Vehicle on or about May 31, 2019 ("Second CCC Report").

23.     Plaintiff's Second CCC Report purports to state a Base Vehicle Value in the amount of $17,250.00, and an Adjusted Vehicle Value of $17,402.00 after the same positive Condition Adjustment in the amount of $152.00.  A true and correct copy of Plaintiff's Second CCC Report is attached and incorporated herein as Exhibit C.

24.     As in the case of the First CCC Report, Garrison added vehicular taxes for a Total of $18,163.34 in the Second CCC Report.

25.     Both the First and Second CCC Reports failed to properly value Plaintiff's vehicle and did not properly pay Actual Cash Value which Garrison owed to the Plaintiff.

**B.    The Garrison and CCC Contract**

26.     Garrison and CCC entered into a contract to provide CCC Market Valuation Reports to Garrison insureds such as Plaintiff and the Class (the "Agreement"). As explained in detail below, CCC Reports include purported market values of total loss vehicles based upon improper and unlawful methodologies.

27.     The Agreement between Garrison and CCC is described on the first page of the

Report Summary as follows:

> The CCC ONE® Market Valuation Report reflects CCC Information Services
> Inc.'s opinion as to the value of the loss vehicle, based on information provided
> to CCC by Garrison Property & Casualty, a USAA Subsidiary.

Exhibits B and C at p. 1.

28.     The CCC Reports specifically bear the names of both CCC and Garrison on the

first page of each Report.

29.     In addition, each CCC Report has the name, Alabama address, and the claim

number of the individual Garrison insured whose total loss vehicle is the subject of the Report.

Thus, Plaintiff's claim information, including Plaintiff's name and address, appear on this first

page of Plaintiff's CCC Report.

30.     Each CCC Report contains a Valuation Methodology, which is described on the

second page of each Report.  (See Plaintiff's Reports, Exhibits B and C at p. 2).

**C.     The CCC Methodology**

31.     The CCC Valuation Methodology ("CCC's Methodology") is explained in

Plaintiff's CCC Reports as a four-step process used to determine the valuation.

32.     This four-step process includes:

> Step 1 – Claim Inspection

> Step 2 – Database Review

> Step 3 – Search for Comparables

> Step 4 – Calculate Base Vehicle Value

*Id.* at p. 2.

33.     As discussed at p. 2 of Plaintiff's CCC Reports, CCC uses this purported Methodology to calculate the Base Vehicle Value.

34.     The Base Vehicle Value is set out on page 1 of Plaintiff's CCC Reports under the heading "Valuation Summary."

35.     Steps 2, 3, and 4 are not based on statistically valid methodologies, algorithms, values or computations. Each step is, in fact, statistically invalid and does not result in a proper valuation of Actual Cash Value for total loss vehicles in Alabama.

**D.     Condition Adjustments to Comparable Vehicles**

36.     In the case of each Market Valuation Report, CCC selects "Comparable Vehicles" identified in its database search. Using its Valuation Methodology, CCC then makes purported adjustments to these Comparable Vehicles.

37.     CCC's Methodology for selecting Comparable Vehicles is statistically flawed and invalid, and, further, it is skewed towards identifying and utilizing Comparable Vehicles which are under-valued and do not fairly reflect Actual Cash Values.

38.     Specifically the CCC Methodology intentionally selects purported comparable vehicles which CCC has not inspected and which are not comparable for many reasons including excessive mileage or damage.   The CCC Methodology intentionally excludes vehicles in the database which are properly comparable to total loss vehicles.

39.     In addition, CCC's purported equity adjustments are statistically involved.

40.     CCC's adjustments to Comparable Vehicles include adjustments for year/model/trim, options, mileage, and condition.  This is reflected on page 8 of Plaintiff's CCC Reports.   None of these purported Comparable Value Adjustments are statistically valid or

justifiable.  Adjustments for purported condition of Comparable Vehicles are hereinafter referred to as "Comparable Vehicle Condition Adjustments".

41.     In Plaintiff's CCC Reports, CCC made negative or downward Condition Adjustments in exactly the same amount (-$699) to each of the Comparable Vehicles.  There is no statistically valid or other proper basis for this negative or downward Condition Adjustment with respect to each of the Comparable Vehicles.

42.     CCC has no actual or accurate knowledge or information regarding the actual condition of Comparable Vehicles which it has not inspected.

43.     The note on page 9 of Plaintiff's CCC Reports states that "the Condition Adjustment sets that comparable vehicle to Good condition, which the loss vehicle is also compared to in the Vehicle Condition section."

44.     There is no accurate or statistically valid set of facts under which this purported "process" could result in a downward Condition Adjustment in exactly the same amount of $699 for each of the comparable vehicles.

45.     The Base Vehicle Value reflected on the first page of every CCC Report is calculated by averaging the purported value of Comparable Vehicles after Comparable Vehicle Condition Adjustments.

46.     Thus, the direct effect of these Comparable Vehicle Condition Adjustments, is to reduce the Base Vehicle Value of Plaintiff's Vehicle by approximately $699.00.  CCC follows this same practice in each case in which CCC makes negative or downward Comparable Vehicle Condition Adjustments.

47.     In addition, although this did not occur in Plaintiff's case, CCC typically also makes condition adjustments to the insured's total loss vehicle as part of the fraudulent scheme alleged herein.

### E.     Summary Regarding Condition Adjustments

48.     The dollar amounts assigned to Condition Adjustments in the CCC Reports to the Comparable Vehicles are wholly arbitrary and are not based on any statistical, objective, valid, or verifiable data. Accordingly, all such downward Condition Adjustments are improper in all respects and should be disregarded in valuing a Garrison insured's total loss vehicle.

49.     Because CCC's calculation of both Base Vehicle Value and the Condition Adjustments to comparable vehicles are statistically invalid, CCC's calculation of Adjusted Vehicle Value does not properly reflect the Actual Cash Value that Garrison is contractually obligated to pay insureds pursuant to the auto insurance policy contracts it issues throughout Alabama. (Exhibit A at p. 17).

50.     The intended and wrongful result of the four steps and, specifically, the Condition Adjustments included in the CCC Methodology, is that total loss vehicles are undervalued, and Garrison insureds' total loss claims are underpaid. This underpayment is a detriment to Garrison insureds, including Plaintiff and Class Members, and a benefit to Defendants.  Rather than paying Plaintiff and Class Members the proper sum of money for their total loss vehicles, Garrison has retained significant funds in the millions of dollars by underpaying Plaintiff and Class Members for the value of their total loss vehicles.

### F.     Garrison's Use of the Unlawful CCC Valuations

51.     Garrison contracted with CCC to receive the CCC Reports.

9

52.     CCC provided Garrison with Reports for the total loss vehicles of the Plaintiff and the Class.

53.     Garrison has a regular practice of informing insureds that the CCC Reports properly establish Actual Case Value and provide the basis for proper payment of total loss claims under Garrison Policies in Alabama.

54.     Garrison has the regular and systemic claims practice of settling total loss claims based upon the CCC Reports.

55.     The Base Vehicle Value and the Adjusted Vehicle Value, including negative Condition Adjustments identified in the CCC Reports for vehicles of Plaintiff and Class Members, result in an underpayment of such total loss claims in the dollar amount of the Condition Adjustment(s).  The great majority of Garrison total loss claims in Alabama are, in fact, settled on the basis of the CCC Reports.

56.     Garrison has actual knowledge that the CCC Methodology is statistically invalid and unlawful.

57.     Garrison has suppressed and concealed material facts relating to CCC's Market Valuation System and its pre-existing scheme in conspiracy with CCC to intentionally undervalue total loss claims, including those of Plaintiff and the Class. Specifically, Garrison concealed from Plaintiff that its purported total loss valuations were based upon the statistically invalid and unlawful CCC Valuation Methodology.

58.     Plaintiff and the Class Members have been damaged by Garrison's systemic underpayment of total loss claims.  This underpayment results from Garrison's intentional failure to fairly and properly determine Actual Cash Value and its knowingly improper downward Condition Adjustments.

### G.   **Guidebook Values**

59.     Other entities involved in the automobile business, such as new and used car dealers, and banks and other lending institutions, have *never* used CCC Reports as a basis for determining a fair valuation or Actual Cash Value of used vehicles.

60.     Such entities have historically used industry-recognized guidebooks as sources for proper used vehicle valuation ("Guidebooks").  These Guidebooks include NADA, Kelly Blue Book and Black Book.  These Guidebooks are a proper source for determining Actual Cash Value.

61.     Historically, insurers also used Guidebooks for the purpose of determining proper valuations of total loss vehicles and Actual Cash Value.  Indeed, many insurers continue to use the Guidebooks to determine Actual Cash Value when determining whether a vehicle can be repaired or must be declared a total loss.

62.     For example, insurers typically declare a vehicle to be a total loss if the estimated repair costs exceed a percentage, such as 80%, of the pre-loss vehicle valuation.

63.     It is typically in the insurer's best interest to establish a higher value of the vehicle for this purpose, so that the cost of repair is a smaller percentage of the pre-crash vehicle valuation.

64.     However, a number of years ago, insurers determined that they could save substantial amounts of money by using third-party valuations prepared by either CCC or a joint venture of J.D. Power/Mitchell.

65.     Accordingly, in the last twenty years, many insurers have adopted the regular practice of using CCC or Power/Mitchell valuations of total loss vehicles, and disregarding the historically-recognized Guidebooks as a source of valuation, to improperly save millions of dollars in adjusting total loss claims.

66.     The valuation products of CCC and Power/Mitchell are not used or recognized by any other "player" in the automobile industry, including dealers or lending institutions.

**H.     Garrison Has Waived and is Estopped to Assert the Appraisal Provision**

67.     Garrison's Preexisting Appraisal Scheme:   During the relevant period of time, Garrison had, and continues to have, a standard practice of refusing to reasonably negotiate the Base Value and Adjusted Vehicle Value as reflected in the CCC Reports.   Specifically, Garrison has a regular practice of refusing to negotiate in good faith with respect to comparable vehicles, mileage adjustments for comparable vehicles, condition adjustments to the specific total loss vehicle, or comparable vehicle condition adjustments.

68.     Garrison knows that its insureds typically have no practical choice other than to accept the total loss payment offered by Garrison simply because the insured needs those monies to purchase a replacement vehicle.   Thus, an insured cannot wait on the appraisal process.

69.     Garrison has a regular practice of threatening to withdraw its offer to pay a total loss if the insured requests an appraisal.   An appraisal process, including selection of an umpire may take forty-five (45) days or more.

70.     This threat of withdrawal of its offer, combined with delay and expense to the insured of an appraisal, as alleged below, present bad faith obstacles to a fair appraisal.   Garrison simply "stands pat" unless it is sued.

71.     Garrison knows that if Garrison insists on "standing" on the CCC valuation, the great majority of insureds will simply capitulate and take the Garrison total loss payment.

72.     Garrison also had, and continues to have, a regular practice that Garrison does not demand an appraisal unless and until an insured files a lawsuit.   Garrison does not include the appraisal provision in its policies for the appropriate purpose of a cheap and efficient resolution,

on a timely basis, of disputed first party total loss claims.  As stated, even where there is a clear and material dispute with an insured, Garrison does not demand an appraisal unless a lawsuit is filed.

73.     Prejudice to Plaintiff Wearing and Other Insureds:  Garrison's scheme to not invoke the appraisal unless and until there is litigation materially prejudices Garrison insureds, including Plaintiff, in several material ways.

74.     First, Garrison typically sells the salvaged total loss vehicle to one of two companies, Copart or IAA.  These companies pay a salvage value to Garrison and then market salvaged parts from total loss vehicles.  The total loss vehicle is typically sold by Garrison and salvaged for spare parts in thirty (30) to forty-five (45) days after the total loss.

75.     Garrison has actual knowledge that if an insured disputes Garrison's total loss payment but does not demand an appraisal, the total loss vehicle will be unavailable for inspection and appraisal after such salvage.  Thus, Garrison knows that if it does not request an appraisal for months or even years, and then does so only if and when litigation is filed against Garrison, the total loss vehicle will be unavailable for physical inspection and appraisal.  Plaintiff's vehicle, of course, has been salvaged and is not available for an inspection.

76.     Garrison also knows that industry-recognized information regarding comparable used vehicles listed for sale at the time of a loss from sources such as AutoTrader and Cars.com is no longer current after about ninety (90) days.

77.     The only possible appraisal after the vehicle has been salvaged is what is known in the industry as a "desktop" appraisal, which is based upon the limited information available a year or two years after the total loss.

78.     The prejudice to insureds such as Plaintiff is clearly illustrated by the information regarding the "vehicle condition," which is listed in CCC Reports.  See Exhibits A and B at 7. Consistent with its standard practice, CCC lists purported "component condition" (including mechanical, tires, paint, body, glass and interior).

79.     When the vehicle is unavailable at the time that Garrison demands an appraisal, it is obviously impossible to fairly review the actual condition of each of the listed "component" conditions based upon an inspection.  Thus, Plaintiff has been deprived of the right to proper inspection-based appraisal as a result of Garrison's delay and the salvage of his vehicle.

80.     <u>Cost as a Deterrent to an Appraisal</u>:  In addition, the fact that the appraisal provision requires that the insured pay for the cost of an appraiser and share the expense of a third party umpire is intended by Garrison, and is, in fact, a significant and improper deterrent to insureds such as Plaintiff with regard to invoking the appraisal provision.  This is because the cost to Plaintiff of an in-person inspection by an appraiser, and the fees and expenses of a third party umpire, may well-exceed $1,000.

81.     For all of these reasons, based upon its pre-existing scheme regarding untimely utilization of the appraisal provision and the clear prejudice to insureds such as Plaintiff Garrison has waived, and are estopped from, invoking the appraisal provision in the Plaintiff's Policy.

## CLASS ALLEGATIONS

82.     Plaintiff brings this class action individually and on behalf of all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class consists of:

> All persons and entities that have made first-party claims since May 9, 2013 under an automobile insurance policy issued within the state of Alabama by Garrison whose vehicles were declared a total loss by Garrison and were valued using CCC's total loss valuation system.

14

83.     Plaintiff excludes from the Class Garrison, CCC, all related entities, subsidiaries or affiliates of said Defendants, any entity in which said Defendants have a controlling interest, and any and all of said Defendants' employees, affiliates, legal representatives, heirs, successors, or assignees.

84.     Plaintiff also excludes from the Class any person or entity that has previously commenced and resolved a lawsuit against said Defendants arising out of the subject matter of this lawsuit.

85.     Plaintiff also excludes from the Class the Judge assigned to this case and any member of the Judge's immediate family.

86.     **The "Condition Adjustment" Subclass:** This Subclass consists of Alabama insureds whose total loss claims were reduced by negative or downward "Condition Adjustments" to either purported comparable vehicles, to the Plaintiff's total loss vehicle, or both.

87.     **The "Market Value" Subclass:** This Subclass consists of all Alabama insureds whose vehicles received CCC Reports with "Adjusted Values" which were less than Actual Cash Value as established by Guidebooks.

88.     **Numerosity:** Both Subclasses are numerous that joinder of all affected persons would be impracticable. Although the exact number of Subclass Members is unknown, the Alabama Subclasses are estimated to comprise many thousands of people who have sustained total losses to their vehicles while insured by Garrison.

89.     **Commonality:** Numerous questions of law and fact are common to Plaintiff and the Class, and predominate over any individual questions. These legal and factual questions include, but are not limited to:

a)     Whether Garrison failed to properly investigate and determine that CCC Reports and CCC's Methodology are statistically invalid;

b)     Whether Garrison has actual knowledge that CCC Reports and CCC's Methodology are statistically invalid;

c)     Whether Garrison's Alabama Policy required it to pay Actual Cash Value to its Alabama insureds on a basis that was statistically valid;

d)     Whether Garrison breached its contracts of insurance with its Alabama insureds by improperly underpaying total loss claims through the use of statistically invalid CCC Reports and CCC's Methodology;

e)     Whether Garrison failed to pay Actual Cash Value to its Alabama insureds;

f)     Whether CCC Reports and CCC's Methodology properly calculate the Actual Cash Value of total loss vehicles at the time of the loss;

g)     Whether Garrison has intentionally and systemically underpaid total loss claims to Plaintiff and the Class by using statistically invalid CCC Reports;

h)     Whether Plaintiff and the Class have sustained damages;

i)     Whether Defendants have been unjustly enriched as a result of the scheme described herein; and,

j)     Whether Garrison and CCC have conspired, as alleged herein.

90.    **Typicality:** Plaintiff's claims are typical of the claims of the Class Members, as Plaintiff and all Members of the Class have suffered damages as a result of Defendants' unlawful and deceptive scheme of settling total loss vehicle claims for substantially less than the actual replacement costs of such vehicles. Specifically, the total loss claims of the Class Members were

adjusted by Garrison based upon CCC Valuations. The same discovery and evidence that would be used to support Plaintiff's claims will be used to support the claims of the Members of the Class.

91.   **Adequacy of Representation:** Plaintiff will fully and adequately represent and protect the interests of the Class Members because they share common injuries as a result of Defendants' conduct that is applicable to all Members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests that are contrary to or in conflict with those of the Class they seek to represent.

92.   **Predominance** and **Superiority:** This Action is properly maintained as a Class Action pursuant to Fed.R.Civ.P. 23, because questions of law and fact common to Plaintiff's claims and the claims of the Members of the Class predominate over questions of law and fact affecting only individual Members of the Class, such that a class action is superior to other methods for the fair and efficient adjudication of this controversy. The issues in relation to Plaintiff's claims are similar to the issues relating to the claims of the other Members of the Class, such that a class action provides a far more efficient vehicle to resolve the claims rather than a myriad of separate lawsuits. Accordingly, for most Class Members, a class action is the only mechanism by which they could reasonably expect to vindicate their rights. Certification of the Class under Rule 23 is also supported by the following considerations:

a)   The relatively small amount of damages that Members of the Class have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b)      Counsel in this class action are not aware of any other earlier litigation against Defendants to which any other Members of the Class are a party and in which any question of law or fact controverted in the subject action is to be adjudicated;

c)      By virtue of Defendants' efforts to conceal their scheme, many Class Members may not even be aware that they have a claim;

d)      The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action;

e)      Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants and further the efficient adjudication of Class Member claims; and

f)      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

**Damages Calculations for the Subclasses**

93.      Calculation of damages for the "Condition Adjustment" Subclass is readily manageable. Garrison maintains specific information in its electronic database relating to first-party total loss claims identifying each claim in the amount of any negative or downward "Condition Adjustment" on each such claim.

94.      In addition, Garrison maintains aggregate data on the total amount of negative or downward "Condition Adjustments" in Alabama (and other states) on an annual basis.

95.      Accordingly, when the "Condition Adjustment" Subclass establishes that all of the Garrison negative or downward "Condition Adjustments" are statistically invalid, then each Member of the "Condition Adjustment" Subclass will be entitled to a refund in the full amount of

any such "Condition Adjustment." As stated, that amount can be readily determined on an individual basis for each Garrison first-party insured as well as on an aggregate basis.

96.    In a similar matter, the damages recoverable by the Market Valuation Subclass may be readily determined from Garrison's electronic database relating to first-party total loss claims in the state of Alabama.

97.    When the Market Value Subclass establishes that "Steps" 2, 3, and 4 of the CCC Methodology, and for making "Condition Adjustments" are invalid and less than Actual Cash Value, then Garrison becomes obligated to pay the total loss claim of each Market Value Subclass Member based upon the Guidebook valuation imbedded in Garrison's electronic database as an alternative and proper determination of Actual Cash Value for each Subclass Member's total loss vehicle.

98.    As in the case of the "Condition Adjustment" Subclass, such information is readily accessible in Garrison's electronic database, and the proper adjustments for each Member of this Subclass can be readily ascertained and determined from that database on an individual basis.

99.    All of the damages claimed in this action on a class-wide basis are readily and easily ascertainable from the Garrison electronic database relating to its Alabama total loss claims.

100.    Defendants have acted, or refused to act, in a manner that applies generally to the Class, such that final injunctive relief is appropriate as to the Class as a whole.

101.    **Adequacy of Representation:** Plaintiff will fully and adequately represent and protect the interests of the Class Members because they share common injuries as a result of Defendants' conduct that is applicable to all Members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial

resources to do so. Neither Plaintiff nor his counsel has any interests that are contrary to or in conflict with those of the Class they seek to represent.

102.    **Predominance and Superiority**: This action is properly maintained as a Class Action pursuant to Rule 23 because questions of law and fact common to Plaintiff's claims and the claims of the Members of the Class predominate over questions of law and fact affecting only individual Members of the Class, such that a Class Action is superior to other methods for the fair and efficient adjudication of this controversy. The issues in relation to Plaintiff's claims are similar to the issues relating to the claims of the other Members of the Class, such that a Class Action provides a far more efficient vehicle to resolve the claims rather than a myriad of separate lawsuits. Accordingly, for most Class Members, a Class Action is the only mechanism by which they could reasonably expect to vindicate their rights. Certification of the Class under Rule 23 is also supported by the following considerations:

a)      The relatively small amount of damages that Members of the Class have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b)      Counsel in this Class Action are not aware of any other earlier litigation against Defendants to which any other Members of the Class are a party and in which any question of law or fact controverted in the subject action is to be adjudicated;

c)      By virtue of Defendants' efforts to conceal their scheme, many Class Members may not even be aware that they have claims against Defendants;

d)      The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action;

e)      Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants and further the efficient adjudication of the Class Members' claims; and

f)      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action.

### Count I – Breach of Contract Against Garrison

103.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 102 as though fully set forth herein.

104.    The Garrison Policy issued to Plaintiff constitutes a valid and binding contract.

105.    Garrison has breached its Policy with Plaintiff in multiple ways, resulting in the material underpayment of Plaintiff's total loss claims, which include, but are not limited to: (a) failure to properly investigate and confirm the statistical validity of the CCC Valuation Methodology; (b) improper delegation of its obligation to value total loss vehicles, including Plaintiff's vehicle, to CCC; and (c) wrongful failure to properly adjust and pay the amounts due and owed to Plaintiff for his total loss vehicle, sufficient for Plaintiff to obtain a comparable replacement vehicle.

106.    Specifically, Garrison has failed to pay Actual Cash Value as required by its Policy to Plaintiff and to Class Members.

107.    Garrison's breach proximately caused Plaintiff's actual damages and the actual damages of the Class. Thus, Garrison is liable for compensatory, consequential and incidental damages flowing from its breach of the Policy, as well as attorneys' fees and interest.

108.    This claim applies to all Class Members.

**Count II – Tortious Interference with Performance of a Contract Against CCC**

109.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 102 as though fully set forth herein.

110.    The Policy obligated Garrison to properly investigate the value of Plaintiff's total loss claims using a fair and statistically valid valuation system or methodology, and then to properly pay Plaintiff the appropriate value of his total loss.

111.    At all times relevant hereto, CCC had knowledge that Garrison entered into such Policies with its insureds and that the Policies obligated Garrison to promptly and properly pay total loss claims. This knowledge is demonstrated by the fact that CCC prepared the CCC Market Valuation Report, which specifically identified Plaintiff and specifically valued Plaintiff's vehicle.

112.    CCC had actual knowledge that Garrison used the CCC Valuations to adjust the total loss claims of Garrison insureds, including Plaintiff's claim.

113.    CCC also had actual knowledge that Garrison typically would refuse to increase total loss valuations beyond the CCC Valuations and that Garrison settled the majority of its total loss claims based upon CCC Valuations.

114.    CCC wrongfully interfered with Garrison's contractual obligations to Plaintiff by knowingly and intentionally providing Garrison with a statistically invalid and wholly arbitrary total loss valuation for the specific purpose of enabling Garrison to underpay the claims of total loss insureds, including Plaintiff's claim.

115.    Garrison's breaches that were caused by CCC's unjustified, intentional and malicious interference with Plaintiff's contractual rights under the Policy include: (a) failing to properly value Plaintiff' total losses; (b) using arbitrary and statistically invalid methodology to

value Plaintiff' total loss claims; and (c) causing Garrison to fail to pay the proper amount due and owed to Plaintiff.

116.    Plaintiff suffered damages as a proximate result of CCC's improper CCC Valuations and resulting tortious interference with the contractual relationship between Garrison and Plaintiff and the Class. Therefore, Plaintiff is entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees to which he may be entitled under Alabama law.

117.    This claim applies to all Class Members.

## Count III – Breach of Contract Claim Against CCC Arising from Plaintiffs' Status as Third-Party Beneficiaries of the Agreement Between Garrison and CCC

118.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 102 as though fully set forth herein.

119.    At all times relevant hereto, CCC contracted to provide Garrison with total loss valuations (the "**Agreement**"). The intended purpose of this Agreement was to outsource Garrison's valuation of total loss claims for the purpose of satisfying the obligations of Garrison to value and pay total loss claims.

120.    As insureds for whom valuations were prepared under this Agreement, Plaintiff and the Class are intended beneficiaries of the Agreement between Garrison and CCC, and are entitled to sue for breach of that Agreement.

121.    Plaintiff alleges that CCC breached this Agreement by providing Garrison with total loss valuations that were not statistically valid and were wholly arbitrary in the manner in which Garrison valued total losses, including Plaintiff's total loss claims. The improper CCC Valuations were supplied to Garrison by CCC in the course of business for the purported direct benefit of Plaintiff and the Class.

122.     CCC's breach of its Agreement to provide valid total loss valuations to Garrison proximately caused damage to Plaintiff.  CCC is, therefore, liable to Plaintiff and the Class as intended third-party beneficiaries for compensatory and consequential damages flowing from said breaches.

123.     This claim applies to all Class Members.

### Count IV – Bad Faith Claim Against Garrison

124.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 102 of this Complaint.

125.     Alabama law recognizes the tort of bad faith, which has different options for proof, namely, proof of a "normal" bad faith claim or, alternatively, an "abnormal" bad faith claim. *Coleman v. Unum Group Corp.*, 207 F.Supp.3d 1281, 1284 (S.D. Al. 2016) (quoting *State Farm Fire and Casualty Company v. Brechbill*, 144 So.3d, 248, 257-258 (Al. 2013).

126.     Specifically, Garrison will not be able to demonstrate that it is entitled to judgment as a matter of law on its underlying breach of contract claim at any point in this litigation up through and including jury verdict.  This is the standard for a normal bad faith claim.

127.     Specifically, Garrison had actual knowledge at all relevant times that the CCC valuation methodology was statistically invalid, did not properly calculate Actual Cash Value and resulted in the significant underpayment of total loss claims.

128.     Garrison intentionally disregarded these facts and, with full knowledge that CCC Reports did not properly determine Actual Cash Value, elected to utilize these CCC Reports to adjust total loss claims for the specific purpose of reducing the individual and aggregate amount of Garrison's total loss claims expense.

129.    Garrison knowingly and intentionally refused to use proper third party sources of valid total loss valuations because using such sources would have cost Garrison more money if it paid Actual Cash Value to its first party insureds such as Plaintiff.

130.    Garrison is also liable to Plaintiff and the Class Members based on proof of its "abnormal" bad faith case. This proof involves Garrison's knowing and intentional failure to properly investigate the total loss claims of Plaintiff and the Class Members.

131.    Specifically, Garrison provided no independent analysis to determine Actual Cash Value as required by the Policy.  Rather, Garrison merely transmitted to CCC electronically its adjusters' visual evaluation of the condition of total loss vehicles and identifying characteristics such as the VIN number.

132.    In so doing, however, Garrison made no effort whatever to make any actual or independent calculation or determination of the proper dollar amount of Actual Cash Value but rather deferred entirely to the valuations in the CCC Reports, which Garrison knew to be statistically invalid and to improperly undervalue the total loss claims of Plaintiff and the Class Members.

133.    This claim applies to all Class Members.

### Count V – Civil Conspiracy Against Garrison and CCC

134.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 102 as though fully set forth herein.

135.    Garrison and CCC entered into an illicit agreement and conspiracy to utilize CCC Valuations to provide improper total loss valuations. Specifically, Garrison and CCC conspired to underpay Plaintiff and the Class by using CCC Valuations, which included the aforementioned

statistically invalid Four Steps, which were not intended to calculate the fair value of total loss vehicles, but rather to improperly undervalue total loss claims of Garrison insureds.

136.    Garrison is a part of the conspiracy by reason of having actual knowledge that the CCC Valuations provided were statically invalid and continuing to utilize the CCC Valuations when determining the payment of Plaintiff and Class Members' total loss claims.

137.    Garrison's conspiracy with CCC to use the invalid CCC Valuation Methodology deprived Plaintiff and the Class of the proper value of their total losses. The overt acts emanating from Defendants' illicit agreement to so deprive Plaintiff and the Class include, but are not limited to, CCC's undervaluation of Plaintiff's claims using CCC Valuations, and Garrison's failure to properly investigate, adjust and pay such claims directly resulting from the CCC Valuations.

138.    Plaintiff and Class Members have been damaged as a proximate result of Defendants' illicit agreement and conspiracy. Therefore, Garrison and CCC are each liable for the torts of one another arising out of their conspiracy as defined herein, and Plaintiff and Class Members are entitled to recover compensatory and punitive damages against Garrison and CCC.

139.    This claim applies to all Class Members.

**Prayer for Relief**

**WHEREFORE,** Plaintiff Walker T. Phillips respectfully requests that this Honorable Court:

A.    Certify the Class alleged herein;

B.    Appoint Plaintiff as Class Representative;

C.    Appoint the undersigned as Class Counsel;

D.    Award Plaintiff and Class Members actual damages in such amount as the Court or Jury may determine;

E.    Award declaratory and injunctive relief as permitted by law;

F.   Award punitive damages as permitted by law;

G.   Award reasonable attorneys' fees, filing fees, expert fees, litigation costs and expenses to counsel based upon the benefit received by Plaintiff and the Class; and

H.   Award Plaintiff and Class Members any additional relief as this Court deems just and proper, including injunctive relief to prohibit Garrison from continuing to utilize CCC Valuations in Alabama.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all counts for which a trial by jury is permitted by law.

Dated:  September 13, 2019.


Respectfully submitted,

**WALLER LAW OFFICE, PC**


*/s/ Jonathan H. Waller*
Jonathan H. Waller (WAL073)
2001 Park Place, Suite 900
Birmingham, AL 35203
Telephone: (205) 313-7330
jwaller@waller-law.com

Jonathan B. Cohen (*Pending PHV Application*)
John A. Yanchunis (*Pending PHV Application*)
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jcohen@forthepeople.com
jyanchunis@forthepeople.com

***Attorneys for Plaintiff and the proposed Class***

ELECTRONICALLY FILED
9/16/2019 10:18 AM
01-CV-2019-904168.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

# EXHIBIT A



USAA®

9800 Fredericksburg Road
San Antonio, Texas 78288

00927.3C57K.JSS128438 76 54.27.01.366

WALKER T PHILIPS

MAIL MCH-M-I

50871-0705



THIS PAGE INTENTIONALLY LEFT BLANK



# AUTOMOBILE POLICY PACKET

WALKER T PHILIPS

GAR     03557 76 89 7101  9

POLICY PERIOD:   FROM JUL 28 2016 TO JAN 28 2017

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs.  Required information forms are also enclosed for your review.

Check your vehicle for a safety recall today! Visit www.usaa.com/autorecall to learn more.

Thank you for enrolling for the Automatic Payment Plan option, which enables you to receive up to a 3% discount on your policy. For details, please review your Supplemental Information page.

At no additional cost, your policy includes the Guaranteed Renewal Endorsement (A099), which ensures that we'll continue to renew your policy provided you are able to drive, pay your premium on time and meet a few simple requirements. For more information including conditions, please read the enclosed endorsement.

An Accident Report form is enclosed to assist you in the event you have an accident, your vehicle is disabled or you need a rental car. Please keep the form in your vehicle.

TEXTING & DRIVING ... It Can Wait! Join USAA in the movement against distracted driving by going to http://itcanwait.usaa.com to watch powerful videos and take the pledge to not text and drive!

This is not a bill.        Any premium charge or change for this policy will be reflected on your next regular monthly statement. Your current billing statement should still be paid by the due date indicated.

**To receive this document and others electronically, or manage your Auto Policy online, go to usaa.com.**

For U.S. calls:  Policy Service (800) 531-8111. Claims (800) 531-8222.

ACS1                                                                                              49708-0406

THIS PAGE INTENTIONALLY LEFT BLANK

## AUTOMOBILE POLICY PACKET CONTINUED

Coverage exclusions apply when your vehicle is used in ride sharing. If you
need coverage for ride sharing activities, we're pleased to offer Ride
Share Gap Protection. For details, see the enclosed documents titled
"Amendment of Policy Provisions – Ride Sharing Activity" and "Important
Information About Ride Sharing Activity."

USAA considers many factors when determining your premium.  Maintaining
safe driving habits is one of the most important steps you can take in
keeping your premium as low as possible.  A history of claim or driving
activity and your USAA payment history may affect your policy premium.

We have provided your ID cards in this packet.  You can use the cards
to show proof of insurance, if necessary.

ACS2

07/27/16

## Automobile Insurance Identification Card

We've issued two identification cards as evidence of liability insurance for your vehicle(s). These cards are valid only as long as liability insurance remains in force.

You may be required to produce your identification card at vehicle registration or inspection, when applying for a driver's license, following an accident or upon a law enforcement officer's request.

**Keep a copy of the ID card in your vehicle at all times.**

For your convenience, additional copies are available on usaa.com.

**53AL**1 Rev. 06-13                                                     55044-0513__01

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| GARRISON PROP AND CAS INS CO | GARRISON PROP AND CAS INS CO |
| NAIC 21253 | NAIC 21253 |
| ALABAMA'S PROOF OF FINANCIAL RESPONSIBILITY INSURANCE IDENTIFICATION CARD | ALABAMA'S PROOF OF FINANCIAL RESPONSIBILITY INSURANCE IDENTIFICATION CARD |
| KEEP IN YOUR VEHICLE AT ALL TIMES. | KEEP IN YOUR VEHICLE AT ALL TIMES. |
| NAME OF INSURED  WALKER T PHILIPS | NAME OF INSURED  WALKER T PHILIPS |
| POLICY NUMBER    03557 76 89R    7101    9 | POLICY NUMBER    03557 76 89R    7101    9 |
| EFFECTIVE DATE 07/28/16    EXPIRATION DATE 01/28/17 | EFFECTIVE DATE 07/28/16    EXPIRATION DATE 01/28/17 |
| VEHICLE DESCRIPTION | VEHICLE DESCRIPTION |
| YEAR 2013    MAKE/MODEL  JEEP    G.CHER 4D | YEAR 2013    MAKE/MODEL  JEEP    G.CHER 4D |
| VEHICLE IDENTIFICATION NUMBER  1C4RJEBG9DC520360 | VEHICLE IDENTIFICATION NUMBER  1C4RJEBG9DC520360 |
| CONTACT US: 210-531-USAA(8722) | CONTACT US: 210-531-USAA(8722) |
| OR 800-531-USAA | OR 800-531-USAA |
| 9800 Fredericksburg Road    San Antonio, Texas 78288 | 9800 Fredericksburg Road    San Antonio, Texas 78288 |
| Additional copies available at usaa.com | Additional copies available at usaa.com |

**GARRISON PROPERTY and CASUALTY INSURANCE COMPANY**
(A Stock Insurance Company)
9800 Fredericksburg Road – San Antonio, Texas 78288

**USAA®**

ALABAMA AUTO POLICY
DECLARATIONS

| State | 01 | | | | Veh | POLICY NUMBER |
|-------|----|--|--|--|-----|---------------|
| AL | 209 | | | | Terr | 03557 76 89R 7101 9 |

POLICY PERIOD: (12:01 A.M. standard time)
**FROM JUL 28 2016 TO JAN 28 2017**

**Named Insured and Address**

WALKER T PHILIPS

OPERATORS
01 WALKER T PHILIPS

## Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | WORK/SCHO Miles One Way | Days Per Wee |
|-----|------|-----------|-------|-----------|----------------|-----------------------|-----|----------|------------------------|--------------|
| 01 | 13 | JEEP | G.CHER 4D | 4 DOOR | 11900 | 1C4RJEBG9DC520360 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. |*W/C=Work/School; B=Business; F=Farm; P=Pleasure

VEH 01   MOUNTAIN BRK AL 35223-1552

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES ("ACV" MEANS ACTUAL CASH VALUE) LIMITS OF LIABILITY | VEH 01 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | |
| BODILY INJURY   EA PER $   500,000 | | | | | | | | |
| EA ACC $   500,000 | | 158.95 | | | | | | |
| PROPERTY DAMAGE EA ACC $   500,000 | | 148.12 | | | | | | |
| PART B - MEDICAL PAYMENTS | | | | | | | | |
| EA PER $   5,000 | | 12.57 | | | | | | |
| PART C - UNINSURED MOTORISTS | | | | | | | | |
| BODILY INJURY   EA PER $   500,000 | | | | | | | | |
| EA ACC $   500,000 | | 63.85 | | | | | | |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| COMPREHENSIVE LOSS   ACV LESS | D 500 | 73.16 | | | | | | |
| COLLISION LOSS   ACV LESS | D 500 | 229.67 | | | | | | |
| RENTAL REIMBURSEMENT | | | | | | | | |
| STANDARD CLASS | | 21.15 | | | | | | |
| TOWING AND LABOR | | 7.20 | | | | | | |
| | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 714.67 | | | | | | |

6 MONTH PREMIUM $   740.87
PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

$   26.20 IS INCLUDED IN YOUR 6 MONTH PREMIUM FOR ACCIDENT FORGIVENESS.

ADDITIONAL MESSAGE(S) - SEE FOLLOWING PAGE(S)

ENDORSEMENTS:   ACCFOR(01)   A099(01)   A402(01)   RSGPCW(01)   5100AL(02)
INFORMATION FORMS:   IIRSGPCW(01)   88356(01)   999AL(21)

52  1
01 RSM220000

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas, on this date   JULY 27, 2016

Deneen Donnley, Secretary

Alan W. Krapf, President

5000 R 05-12
51492-05-12



**GARRISON PROPERTY and CASUALTY**
**INSURANCE COMPANY**
(A Stock Insurance Company)
9800 Fredericksburg Road - San Antonio, Texas 78288

ALABAMA AUTO POLICY
DECLARATIONS

| State | | | | | Veh Terr | POLICY NUMBER |
|---|---|---|---|---|---|---|
| AL | | | | | | 03557 76 89R 7101 9 |

POLICY PERIOD: (12:01 A.M. standard time)
FROM JUL 28 2016 TO JAN 28 2017

**Named Insured and Address**

WALKER T PHILIPS

### Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *W/C=Work/School; B=Business; F=Farm; P=Pleasure

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR: VEH 01 - EXTENDED BENEFITS COVERAGE | | | | | | | | |

FRAUD WARNING
ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION FINES OR CONFINEMENT IN PRISON OR A COMBINATION THEREOF.

| | | | | | | VEH | | | | | | | | VEH | | | | | | VEH | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas, on this date JULY 27, 2016

Deneen Donnley, Secretary

Alan W. Krapf, President

5000 R 05-12
51492-05-12

I.03C57K.000366.0027.0005.0.000000.Z.



**SUPPLEMENTAL INFORMATION**

**FROM JUL 28 2016 TO JAN 28 2017**

The following approximate premium discounts or credits have already been applied to reduce your policy premium costs.

NOTE: Age or **senior citizen** status, if allowed by your state/location, was taken into consideration when your rates were set and your premiums have already been adjusted.

```
VEHICLE 01
   AUTOMATIC PAYMENT PLAN DISCOUNT             -$    20.25
   DAYTIME RUNNING LIGHTS DISCOUNT             -$     6.69
   GOOD STUDENT DISCOUNT                       -$    65.70
      OPERATOR 01
   MY USAA LEGACY DISCOUNT                     -$    75.94
      OPERATOR 01
   PASSIVE RESTRAINT DISCOUNT                  -$     2.22
   PREMIER DRIVER LEVEL DISCOUNT              -$   143.80
```

I.03C57K.000366.0027.0006.0.000000.Z.

PAGE   8
GAR     03557  76  89      7101

## ACCIDENT FORGIVENESS

When a premium for Accident Forgiveness is shown on the Declarations:

1.  If **you** or any **family member** shown as an operator on the Declarations:

    a.  Is involved in an at—fault accident that occurs after the effective date of this endorsement, **we** will waive any premium increase under this policy that would otherwise be applied for the first such at—fault accident.

    b.  Was involved in an at—fault accident forgiven in a policy written by **us** or one of **our** affiliates and such operator was removed from that policy and added to this policy without any gap in coverage, **we** will continue to forgive the accident on this policy for the remainder of the period of time the premium increase would have occurred under this policy if there are no other at—fault accidents for which premium is waived under this policy.

    **We** will waive the premium increase for only one at—fault accident per policy period, regardless of the number of operators shown on the Declarations.

2.  **We** will waive the premium increase for the at—fault accident in Section I for the period of time during which:

    a.  This endorsement is in effect; and

    b.  A premium increase for such at—fault accident would have otherwise applied to this policy.

The Accident Forgiveness Endorsement must remain in effect during any renewal period of this policy over the full accident forgiveness period for the premium increase waiver to remain in effect.

Copyright, USAA 2009. All rights reserved.

ACCFOR(01) 3—09

91228—0309
Page 1 of 1

I.03C57K.000366.0027.0007.0.000000.Z.

# GUARANTEED RENEWAL ENDORSEMENT

This endorsement forms a part of the auto policy to which it is attached. It is effective once this policy has been in effect for 90 days or if this is a renewal, upon the effective date of this policy period. It is subject to all the provisions of the policy and amendments except as they are modified below.

**We** agree that **we** will not cancel or nonrenew this policy as long as:

1. At least one **your covered auto** is garaged in the state in which this policy was issued.

2. The company that issued this policy continues to do business in the state in which this policy was issued.

3. **You** satisfy the eligibility requirements for membership.

4. Premiums are paid when due.

5. **Your** driver's license or that of any operator who resides in **your** household or customarily drives **your covered auto** has not been suspended or revoked during this policy period or the 180 days immediately preceding this policy period.

6. **You** or any **family member** has not been convicted of a major moving traffic violation within the five years immediately prior to the policy renewal effective date. Major moving traffic violations include, but are not limited to:

   a. Failure to stop and render aid or report when involved in an accident.

   b. Fleeing or eluding police.

   c. Driving while intoxicated or under the influence of drugs, including refusal to submit to a blood or chemical test.

   d. Highway racing or speed contest.

   e. Driving a motor vehicle in a reckless manner.

   f. Passing a stopped school bus.

7. Within the five years immediately prior to the policy renewal effective date, **you** or any **family member** has not had more than five accidents, minor moving traffic violations, or a combination thereof.

8. No **covered person** has knowingly concealed or misrepresented a material fact or circumstance relating to this insurance:

   a. At the time application was made; or

   b. At any time during the policy period; or

   c. In connection with the presentation or settlement of a claim.

9. Upon **our** request, **you** or any operator who resides in **your** household or customarily drives **your covered auto** provides **us** with information such as:

   a. Physician's certification of fitness to drive; or

   b. Driver's license information for any operator who resides in **your** household or customarily drives **your covered auto**; or

   c. Information or signed documents **we** are legally required to obtain;

   d. Other information **we** deem necessary to accurately classify or underwrite the risk.

10. **You** or any **family member** has not been convicted of a felony.

If any of the above occurs, **we** may cancel or nonrenew this policy, subject to state law and the Termination section of Part E — General Provisions.

# AMENDATORY ENDORSEMENT

The coverage provided by this Endorsement is subject to all the provisions of the policy and amendments except as they are modified as follows.

## PART D – PHYSICAL DAMAGE COVERAGE

### INSURING AGREEMENT

Paragraph A. is replaced in its entirety by the following:

A.   Comprehensive Coverage (excluding **collision**).

1.   Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations. The deductible will be waived for **loss** to window glass that can be repaired rather than replaced. In cases where the repair proves unsuccessful and the window glass must be replaced, the full amount of the deductible, if any, must be paid.

2.   Transportation expenses. **We** will also pay:

a.   The reasonable amount for transportation expenses incurred by **you** or any **family member**, but no more than the cost of renting an Economy Class vehicle, as defined under Rental Reimbursement Coverage. This applies only in the event of a total theft of **your covered auto**. **We** will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when **your covered auto** is returned to use or, if not recovered or not **repairable**, up to seven days after **we** have made a settlement offer.

b.   If Rental Reimbursement Coverage is afforded, the vehicle class for transportation expenses is the vehicle class shown on the Declarations for Rental Reimbursement for that vehicle.

### LIMIT OF LIABILITY

Paragraph A of the Limit of Liability section is amended to add the following:

3.   If Car Replacement Assistance is shown on the Features Declarations for this **your covered auto**, **we** will pay an additional 20% of the **actual cash value** of the vehicle at the time of a total loss. This additional amount:

a.   Is separate from the limit available for **loss** to **your covered auto** under Comprehensive Coverage or Collision Coverage; and

b.   Is available if the total loss is paid:

(1)   Under this policy's Comprehensive Coverage or Collision Coverage; or

(2)   Because of the **PD** by or on behalf of persons or organizations who may be legally responsible.

However, Car Replacement Assistance does not apply to total loss to any **nonowned vehicle**.

Paragraph D. is replaced in its entirety by the following:

D.  Under Rental Reimbursement Coverage, our maximum limit of liability is the reasonable amount necessary to reimburse you for expenses incurred to rent a vehicle in the applicable class shown on the Declarations:

1.  Economy Class. For purposes of this endorsement, Economy Class means "mini," small or compact 2- and 4-door cars, including convertibles, that are not considered sports or luxury vehicles and are not the station wagon type.

2.  Standard Class. For purposes of this endorsement, Standard Class means standard and full size 2- and 4-door cars, including convertibles, that are not considered sports or luxury vehicles and are not the station wagon type.

3.  Multipassenger/Truck Class. For purposes of this endorsement, Multipassenger/Truck Class means:

a.  Sports and luxury cars of any size;

b.  Station wagons;

c.  Minivans;

d.  Mid-size cargo and passenger vans;

e.  Pickup trucks; and

f.  "Mini," small and midsize sport utility vehicles (SUVs) that are not considered luxury SUVs.

4.  Large SUV Class. For purposes of this endorsement, Large SUV Class means luxury SUVs of any size, large SUVs and large cargo or passenger vans.

## PART E - GENERAL PROVISIONS

OUR RIGHT TO RECOVER PAYMENT

The Our Right to Recover Payment section is amended to add the following:

Our rights in this section do not apply with respect to amounts paid in excess of the actual cash value of your covered auto because of Car Replacement Assistance.

Copyright, USAA, 2012. All rights reserved.

A402(01) 10-13

Page 2 of 2

I,03C57K.000366.0027.0009.0.000000.Z.



USAA®

# AMENDMENT OF POLICY PROVISIONS – RIDE SHARING ACTIVITY

This Amendment forms a part of the auto policy to which it is attached, and it modifies that policy as follows:

Notwithstanding Paragraph 3. of the definition of **covered person** in Part A – Liability, **covered person** does not include any **Transportation Network Company**.

## EXCLUSION

**We** do not provide coverage under this policy for accident or loss that occurs while any **covered person** is operating or **occupying a** vehicle engaged in **ride sharing activity** in conjunction with a **Transportation Network Company.** This exclusion does not apply to a share-the-expense car pool.

This exclusion applies during the time the **covered person** is logged on to the **Transportation Network Company's** online-enabled application or platform and available to accept a passenger or delivery assignment, whether or not a passenger or delivery assignment has been accepted. When a passenger or delivery assignment has been accepted, coverage is excluded while the passenger or property to be delivered is **occupying your covered auto.**

However, if a premium for Ride Share Gap Protection is shown on the Declarations for **your covered auto:**

1. This exclusion does not apply with respect to that vehicle during the time when the **covered person** is logged on to the **Transportation Network Company's** online-enabled application or platform and available to accept a passenger or delivery assignment, but has not yet accepted a passenger or delivery assignment; and

2. Coverage under this policy will extend with respect to that vehicle during the time when the **covered person** is logged on to the **Transportation Network Company's**

online-enabled application or platform and available to accept a passenger or delivery assignment, but has not yet accepted a passenger or delivery assignment.

3. When a passenger or delivery assignment has been accepted, coverage will not extend while the passenger or property to be delivered is **occupying your covered auto.**

## DEFINITIONS

The following definitions apply:

1. **"Ride sharing activity"** means use of **your covered auto** to provide prearranged transportation of persons or property in conjunction with a **Transportation Network Company**.

2. **"Transportation Network Company"** means a person or entity that provides prearranged transportation services for compensation using an online-enabled application or platform to connect clients with drivers who use their personal vehicles to provide the requested transportation. Examples of a **Transportation Network Company** include, but are not limited to Uber, SideCar and Lyft.

## DUTIES

The following duties apply:

1. **You** must notify **us** if any **covered person** is participating in **ride sharing activity**.

2. For accident or loss that occurs while any **covered person** is operating a vehicle engaged in **ride sharing activity**, any person or entity seeking any coverage or

payment of any benefits must cooperate with **us** to ensure **we** are provided with pertinent data regarding the loss, including the precise dates and times:

a. The **covered person** logged on and off the **Transportation Network Company's** online-enabled application or platform; and

b. When a passenger or delivery assignment was accepted through such application or platform.

**You** must cooperate with **us** by executing an authorization to obtain the pertinent data and records regarding the loss, if such authorization is necessary for release of the data or records.

Copyright, USAA 2014. All rights reserved.

I.03C57K.000366.0027.0010.0.000000.Z.

**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

## ALABAMA AUTO POLICY

### READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the company's board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

| | DECLARATIONS PAGE |
|---|---|
| | Named Insured and Address<br>Policy Period<br>Operators<br>Description of Vehicle(s)<br>Coverages, Amounts of<br>  Insurance and Premiums<br>Endorsements |
| Beginning on Page  3 | **Agreement and Definitions** |
| Part A  5 | **Liability Coverage** |
| | Definitions<br>Insuring Agreement<br>  Bodily Injury Liability Coverage and<br>  Property Damage Liability Coverage<br>Limit of Liability<br>Supplementary Payments<br>Exclusions<br>Out of State Coverage<br>Other Insurance |
| Part B  8 | **Medical Payments Coverage** |
| | Definitions<br>Insuring Agreement<br>  Medical Payments Coverage<br>  Extended Benefits Coverage<br>Limit of Liability<br>Exclusions<br>Other Insurance<br>Special Provisions |

(Quick Reference continued on Page 2)

**5100AL(02)** Rev. 07-13

53464-0713__04
Page 1 of 26

| Part C 12 | Uninsured Motorists Coverage | Part E 20 | General Provisions |
|---|---|---|---|
| | Definitions | | Bankruptcy |
| | Insuring Agreement | | Changes |
| | Limit of Liability | | Conformity to Law |
| | Exclusions | | Duties After an Accident or Loss |
| | Other Insurance | | Legal Action Against Us |
| | Non-Duplication | | Misrepresentation |
| **Part D 15** | **Physical Damage Coverage** | | Non-Duplication of Payment |
| | | | Our Right to Recover Payment |
| | Definitions | | Ownership |
| | Insuring Agreement | | Policy Period and Territory |
| |   Comprehensive Coverage | | Reducing the Risk of Loss |
| |   Collision Coverage | | Spouse Access |
| |   Rental Reimbursement Coverage | | Termination |
| |   USAA Roadside Assistance | | Transfer of Your Interest in this |
| | Limit of Liability | |   Policy |
| | Payment of Loss | | Two or More Auto Policies |
| | Loss Payable Clause | | |
| | Waiver of Collision Deductible | | |
| | Exclusions | | |
| | No Benefit to Bailee | | |
| | Other Sources of Recovery | | |
| | Appraisal | | |

I.03C57K.000366.0027.0011.0.000000.Z.

# ALABAMA AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits of liability for which a premium is shown on the Declarations.

## DEFINITIONS

The words defined below are used throughout this policy. They are in **boldface** when used.

A. **"You"** and **"your"** refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B. **"We,"** **"us,"** and **"our"** refer to the Company providing this insurance.

C. **"Abuse"** means the occurrence of one or more of the following acts by **you** or any **family member**.

1. Attempting to cause or intentionally, knowingly, or recklessly causing another person, including a minor child, **BI**, severe emotional injury, or psychological trauma or conduct which constitutes the crime of rape.

2. Intentionally following another person, including a minor child, without proper authority, under circumstances that place the person in reasonable fear of **BI** or physical harm.

3. Subjecting another person, including a minor child, to false imprisonment or kidnapping.

4. Attempting to cause or intentionally, knowingly, or recklessly causing damage to property to intimidate or attempt to control the behavior of another person, including a minor child.

5. Assault, child abuse, criminal coercion, harassment, kidnapping, reckless endangerment, sexual abuse, stalking, trespass, or unlawful imprisonment as defined by subdivision (1) of subsection (a) of Section 30-5-2 of the Code of Alabama.

D. **"Auto business"** means the business of altering, customizing, leasing, parking, repairing, road testing, delivering, selling, servicing, towing, repossessing or storing vehicles.

E. **"Bodily injury"** (referred to as **BI**).

1. **"Bodily injury"** means bodily harm, sickness, disease or death.

2. **"Bodily injury"** does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

F. **"Driving contest or challenge"** includes, but is not limited to:

1. A competition against other people, vehicles, or time; or

2. An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

G. **"Family member"** means a person related to you by blood, marriage, or adoption who resides primarily in **your** household. This includes a ward or foster child.

H. **"Fungi"** means any type or form of **fungi**, including mold or mildew, and includes any mycotoxins, spores, scents, or byproducts produced or released by **fungi**.

I.  **"Miscellaneous vehicle"** means the following motorized vehicles: motor home; golf cart; snowmobile; all–terrain vehicle; or dune buggy.

J.  **"Motorcycle"** means a two– or three–wheeled motor vehicle that is subject to motor vehicle licensing in the location where the **motorcycle** is principally garaged.

K.  **"Newly acquired vehicle."**

1. **"Newly acquired vehicle"** means a vehicle, not insured under another policy, that is acquired by **you** or any **family member** during the policy period and is:

   a.  A private passenger auto, pickup, **trailer** or **van**;

   b.  A **miscellaneous vehicle** that is not used in any business or occupation; or

   c.  A **motorcycle**, but only if a **motorcycle** is shown on the current Declarations.

2. **We** will automatically provide for the **newly acquired vehicle** the broadest coverages as are provided for any vehicle shown on the Declarations. If **your** policy does not provide Comprehensive Coverage or Collision Coverage, **we** will automatically provide these coverages for the **newly acquired vehicle** subject to a $500 deductible for each loss.

3. Any automatic provision of coverage under K.2. will apply for up to 30 days after the date **you** or any **family member** becomes the owner of the **newly acquired vehicle**. If **you** wish to continue coverage for the **newly acquired vehicle** beyond this 30–day period, **you** must request it during this 30–day period, and **we** must agree to provide the coverage **you** request for this vehicle. If **you** request coverage after this 30–day period, any coverage

that **we** agree to provide will be effective at the date and time of **your** request unless **we** agree to an earlier date.

L.  **"Occupying"** means in, on, getting into or out of.

M.  **"Property damage"** (referred to as PD).

1. **"Property damage"** means physical injury to, destruction of, or loss of use of tangible property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

   a.  Stored as or on;

   b.  Created or used on; or

   c.  Transmitted to or from;

   computer software, including systems and applications software, hard or floppy disks, CD–ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

N.  **"Trailer"** means a vehicle designed to be pulled by a private passenger auto, pickup, **van**, or **miscellaneous vehicle**. It also means a farm wagon or implement while towed by such vehicles.

O.  **"Van"** means a four–wheeled land motor vehicle of the van type with a load capacity of not more than 2,000 pounds.

P.  **"Your covered auto"** means:

1. Any vehicle shown on the Declarations.

2. Any **newly acquired vehicle**.

3. **Any** trailer you own.

I.03C57K.000366.0027.0012.0.000000.Z.

# PART A – LIABILITY COVERAGE

## DEFINITIONS

**"Covered person"** as used in this Part means:

1. **You** or any **family member** for the ownership, maintenance, or use of any auto or **trailer**.

2. Any person using **your covered auto**.

3. Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom coverage is afforded in 1. or 2. above. With respect to an auto or **trailer** other than **your covered auto**, this provision only applies if the other person or organization does not own or hire the auto or **trailer**.

The following are not **covered persons** under Part A:

1. The United States of America or any of its agencies.

2. Any person with respect to **BI** or **PD** resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code as amended, require the Attorney General of the United States to defend that person in any civil action which may be brought for the **BI** or **PD**.

## INSURING AGREEMENT

**We** will pay compensatory damages for **BI** or **PD** for which any **covered person** becomes legally liable because of an auto accident. **We** will settle or defend, as **we** consider appropriate, any claim or suit asking for these damages. **Our** duty to settle or defend ends when **our** limit of liability for these coverages has been paid or tendered. **We** have no duty to defend any suit or settle any claim for **BI** or **PD** not covered under this policy.

## LIMIT OF LIABILITY

For **BI** sustained by any one person in any one auto accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for **BI** Liability. Subject to this limit for "each person", the limit of liability shown on the Declarations for "each accident" for **BI** Liability is **our** maximum limit of liability for all damages for **BI** resulting from any one auto accident. The limit of liability shown on the Declarations for "each accident" for **PD** Liability is **our** maximum limit of liability for all damages to all property resulting from any one auto accident.

These limits are the most **we** will pay regardless of the number of:

1. **Covered persons;**

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in the auto accident.

However, if a policy provision that would defeat coverage for a claim under this Part is declared to be unenforceable as a violation of the state's financial responsibility law, **our** limit of liability will be the minimum required by the state's financial responsibility law.

## SUPPLEMENTARY PAYMENTS

In addition to **our** limit of liability, **we** will pay on behalf of a **covered person:**

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. But **we** will not pay the premium for bonds with a face value over **our** limit of liability shown on the Declarations.

Case 2:19-cv-01727-JEO    Document 1-2    Filed 10/22/19    Page 61 of 147

2. Prejudgment interest awarded against the **covered person** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

3. Interest accruing, in any suit **we** defend, on that part of a judgment that does not exceed **our** limit of liability. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment that does not exceed **our** limit of liability.

4. Up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

5. The amount a **covered person** must pay to the United States Government because of damage to a government-owned private passenger auto, pickup, or **van** which occurs while the vehicle is in the care, custody, or control of a **covered person.** The most **we** will pay is an amount equal to one month of the basic salary of the **covered person** at the time of loss. Only Exclusions A.1. and A.8. apply.

6. Other reasonable expenses incurred at **our** request.

7. All defense costs **we** incur.

**EXCLUSIONS**

A. **We** do not provide Liability Coverage for any **covered person:**

   1. Who commits an act of **abuse** or who intentionally acts or directs to cause **BI** or **PD**, or who acts or directs to cause with reasonable expectation of causing **BI** or **PD**.

   2. For **PD** to property owned or being transported by a **covered person**.

   3. For **PD** to property rented to, used by, or in the care of any **covered person**. This exclusion (A.3.) does not apply to damage to a residence or garage.

4. For **BI** to an employee of that person which occurs during the course of employment. This exclusion (A.4.) does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons for a fee. This exclusion (A.5.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

6. While employed or otherwise engaged in the **auto business**. This exclusion (A.6.) does not apply to the ownership, maintenance, or use of **your covered auto** by **you**, any **family member**, or any partner, agent, or employee of **you** or any **family member**.

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the **auto business**, farming, or ranching. This exclusion (A.7.) does not apply:

   a. To the maintenance or use of a private passenger auto; a pickup or **van** owned by **you** or any **family member**; or a **trailer** used with these vehicles;

   b. To the maintenance or use of a pickup or **van** not owned by **you** or any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

8. Using a vehicle without expressed or implied permission.

I.03C57K.000366.0027.0013.0.000000.Z.

9. For **BI** or **PD** for which that person is an insured under any nuclear energy liability policy. This exclusion (A.9.) applies even if that policy is terminated due to exhaustion of its limit of liability.

10. For **BI** or **PD** occurring while **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. For punitive or exemplary damages. However, this exclusion does not apply to punitive or exemplary damages which are awarded in a wrongful death action.

12. For **BI** sustained as a result of exposure to **fungi**, wet or dry rot, or bacteria.

13. For **BI** to a relative who resides primarily in that **covered person's** household.

B. **We** do not provide Liability Coverage for the ownership, maintenance, or use of:

1. Any vehicle that is not **your covered auto** unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A **miscellaneous vehicle**; or

   d. A vehicle used in the business of farming or ranching.

2. Any vehicle, other than **your covered auto,** that is owned by **you,** or furnished or available for **your** regular use. This exclusion (B.2.) does not apply to a vehicle not owned by **you** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

3. Any vehicle, other than **your covered auto,** that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (B.3.) does not apply:

   a. To **your** maintenance or use of such vehicle; or

   b. To a vehicle not owned by any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

4. Any vehicle while being operated in, or in practice for, any **driving contest or challenge**.

C. There is no coverage for liability assumed by any **covered person** under any contract or agreement.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, **your** policy will provide at least the minimum amounts and types of liability coverages required by law. However, no one will be entitled to duplicate payments for the same elements of loss.

## OTHER INSURANCE

If there is other applicable liability insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide to a **covered person** for a vehicle **you** do not own shall be excess over:

1. Any other applicable liability insurance; or

2. Any self-insurance in compliance with a state's financial responsibility law or mandatory insurance law.

# PART B – MEDICAL PAYMENTS COVERAGE

## DEFINITIONS

A. **"Beneficiary"** means (in order of priority of payment):

1. The surviving spouse if a resident in the same household as the deceased at the time of the accident; or

2. If the deceased is an unmarried minor, either of the surviving parents who had legal custody at the time of the accident; or

3. The estate of the deceased.

B. **"Covered person"** as used in this Part means:

1. **You** or any **family member** while **occupying** any auto.

2. Any other person while **occupying your covered auto**.

3. **You** or any **family member** while not **occupying** a motor vehicle if injured by:

    a. A motor vehicle designed for use mainly on public roads;

    b. A **miscellaneous vehicle**; or

    c. A **trailer**.

C. **"Essential services"** means those household services that a **covered person** who is at least 18 years old would have performed without pay.

D. **"Income actually lost"** means the difference between:

1. The total of gross salary, fees, commissions, and profits from a business that a **covered person** was earning at the time of the accident; and

2. The total of gross salary, fees, commissions, profits from a business and payments from an income continuation or similar plan that the **covered person** received during the period of **total disability**.

E. **"Medical payment fee"** is an amount, as determined by **us** or someone on **our** behalf, that **we** will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for **medically necessary and appropriate medical services**. The amount that **we** will pay will be one of the following:

1. The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

2. The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

3. The amount negotiated with the provider; or

4. The lesser of the following:

    a. The actual amount billed; or

    b. A reasonable fee for the service provided.

F. **"Medically necessary and appropriate medical services"** are those services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by **us** or someone on **our** behalf, are required to identify or treat BI caused by an auto accident and sustained by a **covered person** and that are:

I.03C57K.000366.0027.0014.0.000000.Z.

(PART B Cont'd.)

1. Consistent with the symptoms, diagnosis, and treatment of the **covered person's** injury and appropriately documented in the **covered person's** medical records;

2. Provided in accordance with recognized standards of care for the **covered person's** injury at the time the charge is incurred;

3. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;

4. Not primarily for the convenience of the **covered person**, his or her physician, hospital, or other health care provider;

5. The most appropriate supply or level of service that can be safely provided to the **covered person**; and

6. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

However, **"medically necessary and appropriate medical services"** do not include the following:

1. Nutritional supplements or over-the-counter drugs;

2. Experimental services or supplies, which means services or supplies that **we** determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed; or

3. Inpatient services or supplies provided to the **covered person**, when these could safely have been provided to the **covered person** as an outpatient.

G. **"Total disability"** means disability which continuously prevents the **covered person** from performing the substantial duties of that person's usual occupation.

**INSURING AGREEMENT**

A. Medical Payments Coverage.

1. **We** will pay only the **medical payment fee** for **medically necessary and appropriate medical services** and the reasonable expense for funeral services. These fees and expenses must:

a. Result from **BI** sustained by a **covered person** in an auto accident; and

b. Be incurred for services rendered within one year from the date of the auto accident.

2. **We** or someone on **our** behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are **medical payment fees** for **medically necessary and appropriate medical services** or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount **we** determine to be **medical payment fees** and reasonable expenses, but such additional charges are not covered.

3. **We** will not be liable for pending or subsequent benefits if a **covered person** or assignee of benefits under Medical Payments Coverage unreasonably refuses to submit to an examination as required in Part E – General Provisions, Duties After An Accident or Loss.

B. Extended Benefits Coverage. **We** will pay the following benefits for **BI** caused by an auto accident and sustained by a **covered person**:

**(PART B Cont'd.)**

1. Wage Earner Disability Benefit of 85% of **income actually lost** by an employed **covered person** during a period of **total disability**.

2. Essential Services Disability Benefit for reasonable expenses incurred for **essential services** during the time the **covered person** is actually unable to perform the services. This benefit applies only if the services are performed by a non-**family member**.

3. Death Benefit of $5,000 to the **beneficiary** of a **covered person** who dies within one year from the date of the auto accident as a direct result of BI caused by that accident.

## LIMIT OF LIABILITY

The following provisions represent the most **we** will pay regardless of the number of **covered persons** or **beneficiaries**, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident.

A. Medical Payments Coverage.

1. The limit of liability shown on the Declarations for Medical Payments Coverage is the maximum limit of liability for each **covered person** injured in any one accident.

2. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part C of this policy.

B. Extended Benefits Coverage.

The limit of liability for Wage Earner Disability Benefit and the limit of liability for Essential Services Disability Benefit, as stated on the Declarations, is the maximum limit of liability for each coverage for each **covered person** injured in any one accident, subject to the following conditions:

1. Payment of Wage Earner Disability Benefit to **you** or a **family member** will not exceed the amount shown on the Declarations per 30-day period.

2. Payment of Wage Earner Disability Benefit to a **covered person** other than **you** or a **family member** will not exceed $1,000 per 30-day period.

3. Wage Earner Disability Benefit and Essential Services Disability Benefit begin on or after the eighth day after the accident, but no later than one year after the accident. **We** will pay these benefits for no more than one year to any one **covered person**. These benefits will not continue after the death of the **covered person**.

4. Any amounts otherwise payable as benefits under Wage Earner Disability Benefit shall be reduced by:

   a. The amount of any similar benefits which are paid or payable under any workers' compensation law or policy, or under any disability or health and accident policy; and

   b. The amount of any disability benefits provided by any governmental agency.

## EXCLUSIONS

**We** do not provide benefits under this Part for any **covered person** for BI:

1. Sustained while **occupying** any vehicle that is not **your covered auto** unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A **miscellaneous vehicle**; or

   d. A vehicle used in the business of farming or ranching.

I.03C57K.000366.0027.0015.0.000000.Z.

2. Sustained while **occupying your covered auto** when it is being used to carry persons for a fee. This exclusion (2.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

3. Sustained while **occupying** any vehicle located for use as a residence.

4. Occurring during the course of employment if workers' compensation benefits are required or available. This exclusion (4.) does not apply to Extended Benefits Coverage.

5. Sustained while **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by **you**.

6. Sustained while **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by any **family member**. This exclusion (6.) does not apply to **you**.

7. Sustained while **occupying** a vehicle without expressed or implied permission.

8. Sustained while **occupying** a vehicle when it is being used in the business or occupation of a **covered person**. This exclusion (8.) does not apply to **BI** sustained while **occupying** a private passenger auto, pickup or **van**, or a **trailer** used with these vehicles.

9. Caused by or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

10. Sustained while **occupying your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. Sustained while a participant in, or in practice for, any **driving contest or challenge**.

12. Sustained as a result of a **covered person's** exposure to **fungi**, wet or dry rot, or bacteria.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a vehicle **you** do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## SPECIAL PROVISIONS

A. To establish Wage Earner Disability Benefits, any **covered person** making a claim for **income actually lost** must submit all income-related documents **we** may reasonably require.

   Income will be computed using the monthly rate being earned on the date of the accident and will be paid monthly as loss accrues. If not a salary or fixed amount, the monthly rate will be the average monthly income actually earned during the 12 months preceding the accident, or during the period the **covered person** actually was employed if less than 12 months.

B. If **your covered auto** and every other motor vehicle **you** own are within the policy territory referred to in Part E – General Provisions, then coverage under Part B – Medical Payments Coverage will apply to **you** and any **family member** anywhere in the world.

# PART C – UNINSURED MOTORISTS COVERAGE

### (referred to as UM Coverage)

**UM Coverage includes underinsured motorists coverage.**

**DEFINITIONS**

A.  **"Covered person"** as used in this Part means:

1.  **You** or any **family member**.

2.  Any other person **occupying your covered auto**.

3.  Any person for damages that person is entitled to recover because of **BI** to which this coverage applies sustained by a person described in 1. or 2. above.

However, **"covered person"** does not include the United States of America or any of its agencies..

B.  **"Uninsured motor vehicle"** means a land motor vehicle or **trailer** of any type:

1.  To which no liability bond or policy applies at the time of the accident.

2.  To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit of liability specified by the Alabama Motor Vehicle Safety–Responsibility Act.

3.  That is an underinsured motor vehicle. This means the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident:

    a.  Is equal to or greater than the minimum limits for bodily injury liability specified by the Alabama Motor Vehicle Safety–Responsibility Act; and

    b.  Is not enough to pay the full amount the covered person is legally entitled to recover as damages.

4.  That is a hit–and–run motor vehicle. This means a motor vehicle whose owner or operator cannot be identified and that hits or that causes an accident resulting in **BI** without hitting:

    a.  **You** or any **family member**;

    b.  A vehicle which **you** or any **family member** is **occupying**; or

    c.  **Your covered auto**.

5.  To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or is or becomes insolvent.

6.  Which is owned or operated by a self–insurer, but only if the self–insurer is or becomes insolvent.

C.  **"Uninsured motor vehicle"** does not include any vehicle or equipment:

1.  Owned by or furnished or available for the regular use of **you** or any **family member** unless there is no liability coverage available under any policy other than this policy to respond for damages sustained by **you** or any **family member**.

2.  Operated on rails or crawler treads, except for a snowmobile.

3.  Designed mainly for use off public roads while not on public roads.

4.  While located for use as a residence or premises.

I.03C57K.000366.0027.0016.0.000000.Z.

## INSURING AGREEMENT

A. **We** will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of BI sustained by a **covered person** and caused by an auto accident.

B. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle**.

C. With respect to an underinsured motor vehicle as described in Definition B.3. of this Part, **we** will pay under this UM Coverage only if:

1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments; or

2. A proposed settlement has been made between a **covered person** and the insurer of the **uninsured motor vehicle** which would exhaust the limits of liability under any applicable bodily injury liability bonds or policies, and **we**, after receiving prompt written notice of the terms of the proposed settlement:

   a. Waive **our** rights to subrogation; or

   b. Advance an amount equal to the proposed settlement offer.

D. No judgment for damages arising out of a suit brought against the owner or operator of an **uninsured motor vehicle** is binding on **us** unless **we**:

1. Received reasonable notice of the pendency of the suit resulting in judgment; and

2. Had a reasonable opportunity to protect **our** interests in the suit.

## LIMIT OF LIABILITY

A. Except as provided in Paragraph B. below,

1. For BI sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, **all** direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage multiplied by the number of vehicles insured for UM Coverage on this policy, up to a maximum of three vehicles.

2. Subject to this limit for "each person," **our** maximum limit of liability for all damages for BI resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage, multiplied by the number of vehicles insured for UM Coverage on this policy, up to a maximum of three vehicles.

B. If UM Coverage is payable because liability coverage under any policy other than this policy is excluded for damages sustained by **you** or any **family member**:

1. For BI sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability specified in the Alabama Motor Vehicle Safety–Responsibility Act for UM Coverage multiplied by the number of vehicles insured for UM Coverage on this policy, up to a maximum of three vehicles.

2. Subject to this limit for "each person," **our** maximum limit of liability for all damages for BI resulting from any one accident is the limit of liability for "each accident" for UM Coverage specified in the Alabama Motor Vehicle Safety–Responsibility Act, multiplied by the number of vehicles insured for UM Coverage on this policy, up to a maximum of three vehicles.

C. The limits described in Paragraphs A. and B. above are the most **we** will pay regardless of the number of:

1. **Covered persons**;

2. Claims made; or

3. Vehicles involved in the accident.

D. Any amount otherwise payable for damages under UM Coverage shall be reduced by the sum of all bodily injury liability limits applicable to the **uninsured motor vehicle**. This includes the **BI** Liability limits under Part A of this policy. However, subject to the per accident limit for UM Coverage shown on the Declarations, in no event will the amount payable for UM Coverage under this policy be reduced to less than $25,000 per person.

## EXCLUSIONS

A. **We** do not provide UM Coverage for **BI** sustained by any **covered person** if that person or the legal representative settles the **BI** claim without **our** consent, or does not provide advance notice of any proposed settlement as required by the Insuring Agreement of this Part and Part E – General Provisions, Duties After an Accident or Loss.

B. **We** do not provide UM Coverage for **BI** sustained by any **covered person**:

1. While **occupying your covered auto** when it is being used to carry persons for a fee. This exclusion (B.1.) does not apply to:

   a. A share–the–expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

2. Using a vehicle without expressed or implied permission.

3. While **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

4. While **occupying** any vehicle when it is being operated in, or in practice for, any **driving contest or challenge**.

C. UM Coverage shall not apply directly or indirectly to benefit any insurer or self–insurer under any workers' compensation law or similar disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance for UM Coverage available under one or more policies or provisions of coverage:

1. Any insurance **we** provide with respect to a vehicle **you** do not own to a person other than **you** or any **family member** will be excess over any collectible insurance.

2. If the coverage under this policy is provided:

   a. On a primary basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on a primary basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on an excess basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis. However, subject to the per accident limit for UM Coverage shown on the Declarations, in no event will the amount payable for UM Coverage under this policy be reduced to less than $25,000 per person.

I.03C57K.000366.0027.0017.0.000000.Z.

## NON-DUPLICATION

No **covered person** will be entitled to receive duplicate payments under this coverage for the same elements of loss which were:

A. Paid because of the **BI** by or on behalf of persons or organizations who may be legally responsible. If the **covered person** settles with the liability insurer of those legally responsible for less than the available **BI** liability limit, **we** are entitled to credit for the entire available **BI** limit.

B. Paid or payable under any workers' compensation law or similar disability benefits law.

C. Paid under another provision or coverage in this policy.

D. Paid under any automobile medical expense coverage.

# PART D – PHYSICAL DAMAGE COVERAGE

## DEFINITIONS

A. **"Actual cash value"** means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

B. **"Collision"** means the impact with an object and includes upset of a vehicle. **Loss** caused by the following is covered under Comprehensive Coverage and is not considered **collision**: fire; missiles or falling objects; hail, water or flood; malicious mischief or vandalism; theft or larceny; riot or civil commotion; explosion or earthquake; contact with bird or animal; windstorm; or breakage of window glass. If breakage of window glass is caused by a **collision**, **you** may elect to have it considered a **loss** caused by **collision**.

C. **"Custom equipment"** means equipment, furnishings and parts permanently installed in or upon **your covered auto**, other than:

1. Original manufacturer equipment, furnishings, or parts;

2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality;

3. Equipment, furnishings, or parts designed to assist disabled persons;

4. Anti-theft devices and devices intended to monitor or record driving activity; and

5. Tires of a substantially similar size as those installed by the manufacturer.

D. **"Loss"** means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto**. **Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any **loss** of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

E. **"Nonowned vehicle."**

1. **"Nonowned vehicle"** means any private passenger auto, pickup, **van**, **miscellaneous vehicle**, or **trailer** not owned by, or furnished or available for the regular use of, **you** or any **family member**. This applies only when the vehicle is in the custody of or being operated by **you** or any **family member**.

2. A **nonowned vehicle** does not include any of the following vehicles used in any business or occupation other than farming or ranching:

   a. A pickup;

   b. A **van**; or

   c. A **miscellaneous vehicle**.

F. **"Repair."**

   1. **"Repair"** means restoring the damaged property to its pre−loss operational safety, function, and appearance. This may include the replacement of component parts.

   2. **"Repair"** does not require:

      a. A return to the pre−loss market value of the property;

      b. Restoration, alteration, or replacement of undamaged property, unless such is needed for the operational safety of the vehicle; or

      c. Rekeying of locks following theft or misplacement of keys.

G. **"Your covered auto,"** as used in this Part, includes:

   1. **Custom equipment**, up to a maximum of $5,000, in or on **your covered auto**.

   2. A **nonowned vehicle**. If there is a **loss** to a **nonowned vehicle, we** will provide the broadest coverage shown on the Declarations.

**INSURING AGREEMENT**

A. Comprehensive Coverage (excluding **collision**).

   1. Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable

deductible shown on the Declarations. The deductible will be waived for **loss** to window glass that can be repaired rather than replaced. In cases where the repair proves unsuccessful and the window glass must be replaced, the full amount of the deductible, if any, must be paid.

   2. Transportation expenses. **We** will also pay:

      a. Up to $30 a day, to a maximum of $900, for transportation expenses incurred by **you** or any **family member**. This applies only in the event of a total theft of **your covered auto**. **We** will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when **your covered auto** is returned to use or, if not recovered or not **repairable**, up to seven days after **we** have made a settlement offer.

      b. If Rental Reimbursement Coverage is afforded, limits for transportation expenses are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

B. Collision Coverage. **We** will pay for **loss** caused by **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

C. Rental Reimbursement Coverage (for **loss** other than total theft).

   1. **We** will reimburse **you** for expenses **you** or any **family member** incurs to rent a substitute for **your covered auto**. This coverage applies only if:

      a. **Your covered auto** is withdrawn from use for more than 24 hours due to a **loss**, other than a total theft, to that auto; and

I.03C57K.000366.0027.0018.0.000000.Z.

b. The **loss** is covered under Comprehensive Coverage or caused by **collision**, and the cause of **loss** is not otherwise excluded under Part D of this policy.

2. **We** will reimburse **you** only for that period of time reasonably required to **repair** or replace **your covered auto**. If **we** determine **your covered auto** is a total loss, the rental period will end no later than seven days after **we** have made a settlement offer.

D. USAA Roadside Assistance. **We** will pay the reasonable costs **you** or any **family member** incurs for one of the following each time **your covered auto** is disabled:

1. Mechanical labor up to one hour at the place of breakdown.

2. Locksmith services to gain entry to **your covered auto**. This does not include the rekeying of locks following theft or misplacement of keys.

3. Towing, to the nearest place where necessary repairs can be made during regular business hours, if the vehicle will not run or is stranded on or immediately next to a public road.

4. Delivery of gas or oil to, or a change of tire on a disabled vehicle. However, **we** do not pay for the cost of these items.

**LIMIT OF LIABILITY**

A. Total loss to **your covered auto**. **Our** limit of liability for Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**.

1. The maximum amount **we** will include for **loss** to **custom equipment** in or on **your covered auto** is $5,000.

2. **We** will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

B. Other than a total loss to **your covered auto**:

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the amount necessary to **repair** the **loss** based on **our** estimate or an estimate that **we** approve, if submitted by **you** or a third party. Upon request, **we** will identify at least one facility that is willing and and able to complete the **repair** for the amount of the estimate.

2. **Our** estimate may specify used, rebuilt, remanufactured, or non-Original Equipment Manufacturer (non-OEM) parts.

3. **You** may request that damaged parts be replaced with new Original Equipment Manufacturer (OEM) parts. **You** will be responsible, however, for any cost difference between the parts included in **our** estimate and the new OEM parts used in the **repair**.

4. **We** will not take a deduction for depreciation. **We** will take a deduction if prior damage has not been **repaired**. Prior damage does not include wear and tear.

C. Personal property contained in **your covered auto**. The limits of liability described below are separate from the limits available for a **loss** to **your covered auto**.

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the lesser of:

   a. The amount necessary to replace the damaged or stolen property; or

   b. $250.

2. **We** will not take a deduction for depreciation.

D. Under Rental Reimbursement Coverage, **our** maximum limits of liability are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

E. Under USAA Roadside Assistance, **our** limit of liability is the reasonable price for the covered service.

## PAYMENT OF LOSS

**We** may pay for **loss** in money, or **repair** or replace the damaged or stolen property. **We** may, at **our** expense, return any stolen property to **you** or to the address shown on the Declarations. If **we** return stolen property, **we** will pay for any damage resulting from the theft. **We** may keep all or part of the damaged or stolen property and pay **you** an agreed or appraised value for it. **We** cannot be required to assume the ownership of damaged property. **We** may settle a claim either with **you** or with the owner of the property.

## LOSS PAYABLE CLAUSE

**Loss** or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of **your** fraudulent acts or omissions unless the **loss** results from **your** conversion, secretion, or embezzlement of **your covered auto**. **We** may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. **We** will give the same advance notice of cancellation to the loss payee as **we** give to the named insured shown on the Declarations. **We** may send notices to the the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that **we** not send notices, including a notice of cancellation, **we** will abide by that request. When **we** pay the loss payee **we** will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## WAIVER OF COLLISION DEDUCTIBLE

**We** will not apply the deductible to **loss** caused by **collision** with another vehicle if all of these conditions are met:

1. The **loss** to **your covered auto** is greater than the deductible amount; and

2. The owner and driver of the other vehicle are identified; and

3. The owner or driver of the other vehicle has a liability policy covering the **loss**; and

4. The driver of **your covered auto** is not legally responsible, in any way, for causing or contributing to the **loss**.

## EXCLUSIONS

**We** will not pay for:

1. **Loss** to **your covered auto** which occurs while it is used to carry persons for a fee. This exclusion (1.) does not apply to:

   a. A share−the−expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

2. Damage due and confined to:

   a. Road damage to tires;

   b. Wear and tear;

   c. Freezing; or

I.03C57K.000366.0027.0019.0.000000.Z.

d.  Mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of **your covered auto** or its equipment. **We** will pay for ensuing damage only to the extent the damage occurs outside of the major component (such as transmission/transaxle, electrical system, engine including cooling and lubrication thereof, air conditioning, computer, suspension, braking, drive assembly, and steering) in which the initial mechanical or electrical breakdown or failure occurs.

This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto**, and it does not apply to USAA Roadside Assistance.

3.  **Loss** due to or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

4.  **Loss** to a camper body or **trailer** owned by **you** or any **family member** that is not shown on the Declarations. This exclusion (4.) does not apply to one **you** or any **family member** acquires during the policy period and asks us to insure within 30 days after **you** or any **family member** becomes the owner.

5.  **Loss** to any **nonowned vehicle** when used by **you** or any **family member** without a reasonable belief that **you** or that **family member** is entitled to do so.

6.  **Loss** to equipment designed or used to evade or avoid the enforcement of motor vehicle laws.

7.  **Loss** to any **nonowned vehicle** arising out of its use by **you** or any **family member** while employed or otherwise engaged in **auto business** operations.

8.  **Loss** to **your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

9.  **Loss** to any vehicle while it is being operated in, or in practice for, any **driving contest or challenge**.

10. **Loss** resulting from:

    a.  The acquisition of a stolen vehicle;

    b.  Any legal or governmental action to return a vehicle to its legal owner; or

    c.  Any confiscation or seizure of a vehicle by governmental authorities.

    This exclusion (10.) does not apply to innocent purchasers of stolen vehicles for value under circumstances that would not cause a reasonable person to be suspicious of the sales transaction or the validity of the title.

11. **Loss** resulting from use in any illicit or prohibited trade or transportation.

12. Any **loss** arising out of any act committed:

    a.  By or at the direction of **you** or any **family member**; and

    b.  With the intent to cause a **loss**.

    This exclusion (12.) does not apply to an innocent co-insured subject of **abuse** to the extent of the innocent co-insured's interest in the property and within the limits of coverage when the **loss** was proximately related to and in furtherance to **abuse**. To recover for a claim, the innocent co-insured must comply with requirements of the Domestic Abuse Insurance Protection Act.

13. **Loss** caused by **fungi,** wet or dry rot, or bacteria. This means the presence, growth, proliferation, spread, or any activity of **fungi,** wet or dry rot, or bacteria. This exclusion (13.) does not apply to damage directly resulting from a **loss** covered under Comprehensive Coverage or Collision Coverage.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the **loss**, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **nonowned vehicle** will be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **nonowned vehicle**.

2. Any other applicable physical damage insurance.

3. Any other source of recovery applicable to the **loss**.

This provision does not apply to USAA Roadside Assistance.

## APPRAISAL

If **we** and **you** do not agree on the amount of **loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the **actual cash value** and the amount of **loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

---

# PART E – GENERAL PROVISIONS

## BANKRUPTCY

Bankruptcy or insolvency of the **covered person**, as defined in this policy, shall not relieve **us** of any obligations under this policy.

## CHANGES

A. The premium is based on information **we** have received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or is incorrect or incomplete, **we** may adjust your premiums accordingly during the policy period.

B. If, during the policy period, the risk exposure changes for any of the following reasons, **we** will make the necessary premium adjustments effective the date of change in exposure. Change in exposure means the occurrence of an event listed in B.1. through B.7. or in E. below, or a similar event that may increase or decrease the

policy premium. **You** agree to give **us** notice of any exposure change as soon as is reasonably possible. Changes that may result in a premium adjustment include, but are not limited to, the following:

1. Change in location where any vehicle is garaged.

2. Change in description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.

3. Replacement or addition of any vehicle. A replacement or additional vehicle is a **newly acquired vehicle**.

4. Deletion of a vehicle. The named insured may request that a vehicle shown on the Declarations be deleted from this policy. The effective date of this change cannot be earlier than the date of the named insured's request unless **we** agree to an earlier date.

I.03C57K.000366.0027.0020.0.000000.Z.

(PART E Cont'd.)

5. Change in date of birth, marital status, driver's license information, or driving record of any operator.

6. Addition or deletion of an operator.

7. Change, addition, or deletion of any coverage or limits.

C. **We** will make any calculations or adjustments of **your** premium using the applicable rules, rates, and forms as of the effective date of the change.

D. If **we** make a change which broadens coverage under this edition of **our** policy without additional premium charge, that change will automatically apply to **your** insurance as of the date **we** implement that change in **your** location. This paragraph does not apply to changes implemented with a revision that includes both broadenings and restrictions in coverage. Otherwise, this policy includes all of the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.

E. Deployment.

1. If, because of **your** active–duty deployment in one of the military services of the United States, **you** have reduced the coverage on **your covered auto** and placed the vehicle in storage, then, upon **your** return from the deployment, **we** will reinstate the coverage that was on the vehicle prior to the deployment–caused reduction, beginning on the date the vehicle is removed from storage.

2. Any reinstatement of coverage under E.1. will apply for up to 60 days after the date **you** returned from deployment. If **you** wish to continue the reinstated coverage beyond the 60–day period, **you** must request it during the 60–day period. If **you** request reinstated coverage after this 60–day period, any coverage **we** agree to provide will be effective at the date and time of **your** request unless **we** agree to an earlier date.

3. **You** must pay an additional premium, as set out in Part E., Changes, B.7., for the reinstated coverage. However, if **you** return from deployment on furlough or emergency leave for a period of 30 days or less, **we** will waive any increase in the premium for the period of time **you** are on furlough or emergency leave, provided that no claim for coverage under this policy is made for a loss that occurs during that time period. If a loss occurs **we** will, as of the date of the loss, reinstate the coverage that was on the vehicle prior to the deployment–caused reduction, and **you** must pay an additional premium for that coverage.

## CONFORMITY TO LAW

If any of the terms of this policy conflict with state or local law, state or local law will apply.

## DUTIES AFTER AN ACCIDENT OR LOSS

**We** will not be required to provide coverage under this policy unless there has been full compliance with the following duties:

A. **We** must be notified promptly of how, when, and where an accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person or entity seeking any coverage or payment of any benefits except payment under Part A – Liability must:

1. Cooperate with **us** in the investigation, settlement, or defense of any claim or suit.

2. Promptly send **us** copies of any notices or legal papers received in connection with a suit, accident or loss.

3. Submit, as often as **we** reasonably require:

a. To physical exams by physicians **we** select. **We** will pay for these exams.

b. To examination under oath. The examination must be signed.

4. Authorize **us** to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by **us**.

6. Promptly notify the police if a hit-and-run driver is involved.

C. A person seeking coverage for a claim involving an underinsured motor vehicle as described in Definition B.3. of Part C – UM Coverage must also promptly notify **us** in writing of a proposed settlement between the **covered person** and the insurer of the underinsured motor vehicle and allow **us** 30 days to advance payment to the **covered person** in an amount equal to the proposed settlement to preserve **our** rights against the insurer, owner or operator of such vehicle.

D. A person seeking coverage under Part D – Physical Damage Coverage must also:

1. Take reasonable steps after loss to protect **your covered auto** and its equipment from further loss. **We** will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** is stolen.

3. Permit **us** to inspect and appraise the damaged property before its repair or disposal.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against **us** until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against **us** until **we** agree in writing that the **covered person**, as defined in Part A, has

an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring **us** into any action to determine the liability of a **covered person**, as defined in this policy.

C. Unless **we** agree otherwise, any legal action against **us** must be brought in a court of competent jurisdiction in the county and state where the **covered person** lived at the time of the accident.

## MISREPRESENTATION

**We** do not provide coverage for any **covered person**, as defined in this policy, who has concealed or misrepresented with actual intent to deceive any material fact or circumstance relating to this insurance:

1. At the time application was made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

## NON-DUPLICATION OF PAYMENT

When a claim, or part of a claim, is payable under more than one provision of this policy, **we** will pay the claim only once under this policy.

## OUR RIGHT TO RECOVER PAYMENT

A. If **we** make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, **we** will be subrogated to that right. The person to or for whom payment was made shall do whatever is necessary to enable **us** to exercise **our** rights, and shall do nothing after loss to prejudice them. However, **our** rights in this paragraph do not apply:

1. Under Part B, Extended Benefits Death Benefit.

I.03C57K.000366.0027.0021.0.000000.Z.

2. Under Part C – UM Coverage with respect to claims involving an underinsured motor vehicle, as described in Definition B.3. of that Part, if **we** fail to advance payment to the **covered person** in an amount equal to the proposed settlement within 30 days after receipt of notification.

   a. That payment will be separate from any amount the **covered person** is entitled to recover under the provisions of UM Coverage; and

   b. **We** also have a right to recover the advance payment.

3. Under Part D – Physical Damage Coverage, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

B. If **we** make a payment under this policy and the person to or for whom payment was made recovers damages from another, the person to or for whom payment was made shall hold in trust for **us** the proceeds of the recovery and reimburse **us** to the extent of **our** payment. However, this paragraph does not apply to Part B, Extended Benefits Death Benefit.

C. If the **covered person**, as defined in this policy, recovers from the party at fault and **we** share in the recovery, **we** will pay **our** share of the legal expenses. **Our** share is that percent of the legal expenses that the amount **we** recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by **us** from any other insurer under any inter–insurer arbitration agreement.

D. If **we** make payment for a claim under Part A, and the **covered person**, as defined in Part A:

1. Knowingly concealed or misrepresented any material fact or circumstance relating to this insurance; or

2. Failed or refused to comply with the duties specified in this policy and prejudiced **our** defense of the liability claim by such failure or refusal;

then, the **covered person** shall reimburse **us** to the extent of **our** payment and cost of defense.

## OWNERSHIP

For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur during the policy period as shown on the Declarations and within the policy territory. The policy territory is the United States of America (USA), its territories and possessions, Puerto Rico, and Canada, including transportation of **your covered auto** between any ports of these locations.

B. The policy territory also includes Mexico, subject to the following conditions:

1. All coverages afforded by the policy are extended to include coverage during trips into Mexico. This applies only to loss or accident that occurs within 75 miles of the USA border.

2. Any liability coverage afforded by the policy is extended to include the remainder of Mexico, but only if **you** have valid and collectible liability coverages from a licensed Mexican insurance company at the time of loss. This paragraph (B.2.) applies only if the original liability suit for **BI** or **PD** is brought in the USA.

3. Coverage under this policy does not extend:

   a. To any **covered person**, as defined in this policy, who does not live in the USA.

b. To any **covered person**, as defined in this policy, **occupying** a vehicle which is not principally garaged and used in the USA.

c. To any vehicle which is not principally garaged and used in the USA.

4. The words "state or province" as used in the Out of State Coverage provision in Part A of the policy do not include a "state or province" of Mexico.

5. Losses payable under Part D of the policy will be paid in the USA. If the vehicle must be repaired in Mexico, **our** limit of liability will be determined at the nearest point in the USA where repairs can be made.

6. Any insurance **we** provide will be excess over any other similar valid and collectible insurance.

## REDUCING THE RISK OF LOSS

**We** may occasionally provide **you** with products or services that assist **you** in preventing or reducing the risk of loss, and may provide an incentive for **your** use of these items.

## SPOUSE ACCESS

A. The named insured and **we** agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

B. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

## TERMINATION

A. Cancellation. This policy may be cancelled during the policy period as follows:

1. **You** may cancel this policy at any time, but the effective date of cancellation cannot be earlier than the date of the request unless **we** agree to an earlier date.

2. **We** may cancel this policy by sending notice to the named insured shown on the Declarations. This cancellation notice may be delivered to **you**, mailed to **you** by postal mail at the most recent address **you** provided to **us** or sent electronically if **we** have **your** consent and agreement on file to receive documents electronically. In any event, **we** will give:

   a. At least ten days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal policy; or

   b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal policy, **we** will cancel only:

   a. For nonpayment of premium; or

   b. For fraud or material misrepresentation affecting the policy or the presentation of a claim; or

   c. For a violation of the terms or conditions of the policy; or

   d. If **your** driver's license or that of any driver who customarily uses **your covered auto**, has been suspended or revoked. This must have occurred:

I.03C57K.000366.0027.0022.0.000000.Z.

(PART E Cont'd.)

(1) During the policy period; or

(2) Since the last anniversary of the original effective date if the policy period is other than one year.

4. **We** may cancel for any other reason not prohibited by law.

B. Nonrenewal. If **we** decide not to renew this policy, **we** will send notice to the named insured shown on the Declarations. This notice may be delivered to **you**, mailed to **you** by postal mail at the most recent address **you** provided to **us** or sent electronically if **we** have **your** consent and agreement on file to receive documents electronically. In any event, notice will be sent at least 20 days before the end of the policy period.

C. Automatic Termination.

1. If **we** offer to renew and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due will mean that **you** have not accepted **our** offer.

2. If **you** obtain other insurance on **your covered auto**, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. This does not apply to liability coverage purchased for travel in Mexico.

D. Other Termination Provisions.

1. Proof of mailing or electronic transmission will be sufficient proof of notice.

2. If this policy is cancelled, the named insured shown on the Declarations may be entitled to a premium refund. The premium refund, if any, will be computed according to **our** manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice will become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**Your** rights and duties under this policy may not be assigned without **our** written consent. However, if the named insured shown on the Declarations dies, **we** will provide coverage until the end of the policy period for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if the named insured shown on the Declarations; and

2. The legal representative of the deceased person as if the named insured shown on the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto**.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy **we** issued to **you** apply to the same accident, the maximum limit of **our** liability under all the policies will not exceed the highest applicable limit of liability under any one policy. This does not apply to UM Coverage.

Copyright, USAA, 2011. All rights reserved.
Includes copyrighted material of Insurance Services Office, used with permission.

THIS PAGE INTENTIONALLY LEFT BLANK

I.03C57K.000366.0027.0023.0.000000.Z.

# Important Information About Ride Sharing Activity

**What is ride sharing?**

Ride sharing is the use of your personal vehicle to provide pre-arranged transportation of persons or property for compensation. The transportation arrangement is facilitated through a Transportation Network Company (TNC). Examples of TNCs include Uber, SideCar and Lyft. Ride sharing is an emerging industry and many municipalities are still evaluating whether and how to regulate these activities. If you intend to participate in ride sharing, we recommend that you check state and local laws regularly for any applicable legal requirements or restrictions.

**Does my USAA policy cover ride sharing?**

Your USAA auto policy does not provide any coverage while your insured vehicle is used in ride sharing. Coverage provided by the TNC may not apply during the time you are available to accept a passenger or delivery assignment, but have not yet accepted a passenger or delivery assignment. If you are involved in ride sharing, you may have a gap in coverage. It's important to understand the coverage provided by the TNC, so we recommend you contact them for more information.

**How can USAA help?**

We're pleased to offer Ride Share Gap Protection, which will extend coverage during the time you are available to accept a passenger or delivery assignment, but have not yet accepted a passenger or delivery assignment.

If you or a resident relative is involved in ride sharing activities, please call 210-531-USAA (8722), our mobile shortcut #8722 or 800-531-8722 to discuss adding Ride Share Gap Protection to your policy. We will be happy to provide you with a quote.

**Does USAA need to know if I'm involved in ride sharing?**

Yes, you must notify us immediately if you or a resident relative is involved in ride sharing activities. See the enclosed endorsement titled "Amendment of Policy Provisions – Ride Sharing Activity" for more details.

**Avoid Driving While Distracted**

Safety is a top priority for USAA, and we encourage our members to avoid driving while distracted, including while engaging in ride sharing activities.

I.03C57K.000366.0027.0024.0.000000.Z.

PAGE 41
GAR      03557 76 89      7101



9800 Fredericksburg Road
San Antonio, Texas 78288

## ACCIDENT REPORT FORM

The accident report form is a useful tool to assist you in the event you have an accident, loss, you are injured, your vehicle is disabled or you need a rental car.

Please place a copy of this form in each of your vehicles as a reference tool to help you remember information necessary in processing your claim.

In the event of an accident, there are several things to remember:

♦ **Move to a safe location** if you or your car is creating a safety hazard or if you're concerned with your safety.

♦ **Do not leave the scene of the accident** until you have exchanged contact information with the others involved.

♦ **Call the police** and follow their instructions.

  • **Call 911** if there are any injuries

  • In minor accidents, the police may instruct you to exchange information and then contact your insurance company

♦ **Do not discuss who is at fault** with other parties.

♦ **Do not disclose your policy details.** You should only share your drivers license number, that you're insured with USAA, provide your member and USAA's phone number.

♦ **Collect as much information as you can** about the other drivers using the form below.

By contacting USAA at usaa.com or by phone at **1-800-531-8722 (USAA)** you can:

♦ **Report your claim.**

♦ **Request a tow** from the scene of the accident. If your vehicle has already been moved for storage or safety, we can assist you in having your vehicle towed from the storage location.

♦ **Reserve a rental** vehicle.

♦ **Arrange your repairs.** You have the right to select the repair shop of your choice. If you are uncertain where to have your damaged vehicle repaired, USAA can assist you in selecting a repairer in the USAA's STARS[1] auto repair network convenient to your business or home.
If you select the STARS option, repairs will be warranted for as long as you own the vehicle.

If you are not injured and can exchange information with the other driver(s), we ask that you attempt to collect the following information to assist in expediting your claim. (Use the other side of this form for more room if necessary.)

| LOSS INFORMATION | |
|---|---|
| Date of Accident:_____ | Street/Location: _____ |
| Time of Accident:_____ | City and State: _____ |
| Police/Sheriff Dept. _____ | Report #: _____ |

| OTHER VEHICLES AND PARTIES | |
|---|---|
| Name of Driver: _____ | Name of Driver: _____ |
| Address, City, St:_____ | Address, City, St:_____ |
| Drivers License Number:_____ State:_____ | Drivers License Number: _____ State:_____ |
| Phone Number:  _____ Insurance Co.:_____ | Phone Number:  _____ Insurance Co.:_____ |
| Policy Number: | Policy Number: |
| Vehicle License Number: _____ State: ____ | Vehicle License Number: _____ State: ____ |
| Year of Vehicle: _____Make _____Model _____ | Year of Vehicle: _____Make _____Model _____ |
| Passengers (y/n): ___How Many:___Injuries (y/n):__ | Passengers (y/n): ___How Many:___Injuries (y/n):__ |
| Passenger Names:_____ | Passenger Names:_____ |
| Witnesses:_____ | Witnesses:_____ |

[1]STARS facilities are part of USAA's repair network program and warrant repairs for as long as you own your vehicle. Regardless of where you have your vehicle towed after an accident, you are entitled to have your vehicle repaired at the shop of your choice.

88356-0608

THIS PAGE INTENTIONALLY LEFT BLANK

I.03C57K.000366.0027.0025.0.000000.Z.

## Uninsured Motorists Coverage in Alabama

Below, you will find a brief explanation of Uninsured Motorists Coverage. Please remember that this explanation is only an overview, and it does not replace or supplement any of the provisions of your policy. Please see your policy for details because the policy controls all issues of coverage.

The decisions you make regarding the amount of coverage will affect your insurance premium. If you have questions, please call Policy Service at **1-800-531-USAA (8722). You may complete this form online at usaa.com.**

### Coverage Description

### Uninsured Motorists (UM) Coverage

- Protects you and your family if injured in a motor vehicle accident caused by an uninsured or hit-and-run motorist who is at-fault.

- Pays if you are injured by an at-fault motorist whose Bodily Injury (BI) Liability limits are less than the amount of damages you are legally entitled to recover from the at-fault motorist. The at-fault motorist's policy pays first, then your UM Coverage pays the lesser of:

  - any remaining loss, or

  - your UM Coverage limits.

- Must be issued with UM Coverage limits equal to the minimum coverage limits required by Alabama unless you reject UM Coverage or select higher UM Coverage limits by completing, signing and returning the Rejection/Selection Form by mail or at **usaa.com.**

- Your rejection of UM Coverage limits will remain in effect on this policy and on future renewals until you request otherwise in writing.

### Stacking

- Is issued with "stacked" UM Coverage limits.

- "Stacked" UM Coverage means the maximum limit of liability for any one accident is the UM Coverage limit on the Declarations Page multiplied by the number of vehicles insured for UM Coverage on your policy, **not to exceed the sum of UM Coverage limits up to three vehicles.** For example, if you purchase UM Coverage limits of $100,000 per person and $300,000 per accident on two vehicles, you would have a total UM Coverage of $200,000 per person and $600,000 per accident ($100,000/ $300,000 x 2). If you had four vehicles with those limits, your stacked UM Coverage would be $300,000/$900,000.



THIS PAGE INTENTIONALLY LEFT BLANK



## Rejection/Selection Form

**If you do not wish to make any changes to your current policy, no action is required.** TO MAKE CHANGES TO YOUR POLICY, PLEASE COMPLETE THIS FORM, SIGN, AND RETURN IT TO US. The premiums below reflect the total premium for this coverage for all vehicles insured on your Policy.

---

**Uninsured Motorists (UM) Coverage**

Semi-annual premium per policy

To make a change to your current policy, you must check one of the following boxes:

| Limits | Premiums |
|---|---|
| Per person/per accident | |

| | Limits | | Premiums |
|---|---|---|---|
| ☐ | $   25,000/$    50,000 | $ | 22.15 |
| ☐ | $   50,000/$   100,000 | $ | 33.24 |
| ☐ | $  100,000/$   200,000 | $ | 48.97 |
| ☐ | $  100,000/$   300,000 | $ | 51.29 |
| ☐ | $  300,000/$   500,000 | $ | 58.27 |
| ☐ | $  500,000/$   500,000 | $ | 63.85 |
| ☐ | $  500,000/$ 1,000,000 | $ | 64.12 |
| ☐ | $ 1,000,000/$ 1,000,000 | $ | 77.91 |

Select as applicable.

☐  I reject UM Coverage for this policy and all subsequent renewals until I request otherwise in writing.

---

DO NOT SIGN UNTIL YOU READ

---

_____     _____

USAA Number             Signature of Named Insured

(____)                  (____)                          _____

Home Phone              Alternative Phone               Date

Please complete this form and fax it to 1−800−531−8877 or mail it to USAA, 9800 Fredericksburg Road, San Antonio, Texas 78288; or **complete this form on usaa.com**

If this form is sent by facsimile machine (fax), the sender adopts the document USAA receives as a duplicate original and adopts the signature the receiving fax machine produces as the sender's original signature.

**999AL(21)**  Rev. 8−08

PS.035577689.999AL.07101



Page 3 of 4

GAR    03557 76 89    7101

THIS PAGE INTENTIONALLY LEFT BLANK



ELECTRONICALLY FILED
9/16/2019 10:18 AM
01-CV-2019-904168.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

# EXHIBIT B



# MARKET VALUATION REPORT

*Prepared for GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY*



## REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Philips, Walker |
| | <span style="background:red">Redacted</span> |
| Loss Vehicle | 2013 Jeep Grand Cherokee Limited RWD |
| Loss Incident Date | 05/19/2019 |
| Claim Reported | 05/23/2019 |

### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 93097260 |
| Claim Reference | 03557768900000001001 |
| Adjuster | Gault, Geoffrey |
| Odometer | 72,742 |
| Last Updated | 05/23/2019 11:11 AM |

### VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 16,404.00** |
| Condition Adjustment | + $ 152.00 |
| **Adjusted Vehicle Value** | **$ 16,556.00** |
| Vehicular Tax (4.375%) | + $ 724.33 |
| Tax reflects applicable state, county and municipal taxes. | |

| **Total** | **$ 17,280.33** |
|---|---|

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

---

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY.

Loss vehicle has 20% fewer than average mileage of 90,600.

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology............................2
Vehicle Information...................................3
Vehicle Condition.....................................7
Comparable Vehicles............................. 8
Valuation Notes.....................................17
Supplemental Information.....................18

---

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

CCC ONE. **MARKET VALUATION REPORT**

# VALUATION METHODOLOGY

## How was the valuation determined?



### CLAIM INSPECTION

GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the straight average of the adjusted values of the comparable vehicles.



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 **CCC ONE.** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | BIRMINGHAM,  AL  35223 |
| VIN | 1C4RJEBG9DC520360 |
| Year | 2013 |
| Make | Jeep |
| Model | Grand Cherokee |
| Trim | Limited |
| Body Style | RWD |
| Body Type | Sports Utility |
| Engine - | |
|    Cylinders | 6 |
|    Displacement | 3.6L |
|    Fuel Type | Flex Fuel |
|    Carburation | Electronic Fuel Injection |
| Transmission | Automatic Transmission |
| Curb Weight | 4700 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE HISTORY SUMMARY

| | |
|---|---|
| Experian AutoCheck | No Title Problem Found |
| National Highway Traffic Safety Administration | 8 Recalls |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 **MARKET VALUATION REPORT** | Owner: Philips, Walker
Claim: 035577689000000001001

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| Odometer | 72,742 | |
| Transmission | Automatic Transmission | ✓ |
| Power | Power Steering | ✓ |
| | Power Brakes | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Power Driver Seat | ✓ |
| | Power Passenger Seat | ✓ |
| Decor/Convenience | Air Conditioning | ✓ |
| | Climate Control | ✓ |
| | Tilt Wheel | ✓ |
| | Cruise Control | ✓ |
| | Rear Defogger | ✓ |
| | Intermittent Wipers | ✓ |
| | Console/Storage | ✓ |
| | Overhead Console | ✓ |
| | Memory Package | ✓ |
| | Navigation System | ✓ |
| | Keyless Entry | ✓ |
| | Telescopic Wheel | ✓ |
| | Message Center | ✓ |
| | Home Link | ✓ |
| | Remote Starter | ✓ |
| Seating | Bucket Seats | ✓ |
| | Reclining/Lounge Seats | 🗒 |
| | Leather Seats | ✓ |
| | Heated Seats | ✓ |
| | Rear Heated Seats | ✓ |
| Radio | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |

To the left is the equipment of the loss vehicle that GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY provided to CCC.

✓ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🗒 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

CCC ONE  MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| | Search/Seek | ✔ |
| | CD Player | ✔ |
| | Steering Wheel Touch Controls | ✔ |
| | Auxiliary Audio Connection | ✔ |
| | Satellite Radio | ✔ |
| **Wheels** | Aluminum/Alloy Wheels | ✔ |
| **Roof** | Electric Glass Roof | ✔ |
| | Skyview Roof | ✔ |
| **Safety/Brakes** | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Head/Curtain Air Bags | ✔ |
| | Positraction | ✔ |
| | Backup Camera W/ Parking Sensors | ✔ |
| | Hands Free | ✔ |
| | Xenon Headlamps | ✔ |
| | Alarm | ✔ |
| | Traction Control | ✔ |
| | Stability Control | ✔ |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
| | Heated Mirrors | ✔ |
| | Body Side Moldings | ✔ |
| | Privacy Glass | ✔ |
| | Fog Lamps | ✔ |
| | Luggage/Roof Rack | ✔ |
| | Rear Spoiler | ✔ |
| | Rear Window Wiper | ✔ |
| | Signal Integrated Mirrors | ✔ |
| | Clearcoat Paint | 📄 |
| | Metallic Paint | 📄 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

**CCC ONE.** MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| Other - Trucks | | |
|---|---|---|
| | Rear Step Bumper | |
| | Trailer Hitch | |
| | Trailering Package | |
| | California Emissions | ✔ |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

CCC ONE. MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# 🚘 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| Mechanical | VERY GOOD | ENGINE BAY CLEAN, NO SIG LEAKS OR SEEPAGE | $ 122 |
| Tires | VERY GOOD | TIRES AVG 8/32 | $ 30 |
| Paint | GOOD | SOME CHIPS AND BUBBLING IN HOOD | $ 0 |
| Body | GOOD | DENTS AND DINGS, RT FRT DOOR | $ 0 |
| Glass | GOOD | SOME CHIPS AND PITTING IN WINDSHIELD | $ 0 |
| Interior | GOOD | INTERIOR DIRTY SOME STAINS AND WEAR. | $ 0 |
| **Total Condition Adjustments** | | | **$ 152** |

GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Good condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential



**CCC ONE** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 72,742 | 69,163 | 146,224 | 79,503 |
| Automatic Transmission | ✓ | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Power Driver Seat | ✓ | ✓ | ✓ | ✓ |
| Power Passenger Seat | ✓ | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✗ | ✗ | ✓ | ✗ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ | ✓ |
| Overhead Console | ✓ | ✓ | ✓ | ✓ |
| Memory Package | ✓ | ✓ | ✓ | ✓ |
| Navigation System | ✓ | ✓ | ✓ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ | ✓ |
| Message Center | ✓ | ✓ | ✓ | ✓ |
| Home Link | ✓ | ✓ | ✓ | ✓ |
| Remote Starter | ✓ | ✓ | ✓ | ✓ |
| Wood Interior Trim | ✗ | ✓ | ✗ | ✗ |
| Bucket Seats | ✓ | ✓ | ✓ | ✓ |
| Reclining/Lounge Seats | ✓ | ✗ | ✗ | ✗ |
| Leather Seats | ✓ | ✓ | ✓ | ✓ |
| Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Rear Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Ventilated Seats | ✗ | ✗ | ✓ | ✗ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ | ✓ |
| CD Player | ✓ | ✓ | ✓ | ✓ |
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ | ✓ |
| Auxiliary Audio Connection | ✓ | ✓ | ✓ | ✓ |
| Premium Radio | ✗ | ✗ | ✓ | ✗ |

**Comp 1**   Updated Date: 04/30/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
**VIN** 1C4RJEBG8DC546318
**Dealership** Tuscaloosa Chevrolet
**Telephone** (205) 758-4451
**Source** Autotrader
**Stock #** U46318
**Distance from Birmingham, AL**
43 Miles - Cottondale, AL

**Comp 2**   Updated Date: 04/29/2019
**2013 Jeep Grand Cherokee Overland Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
**VIN** 1C4RJECG1DC534283
**Dealership** Limbaugh Toyota
**Telephone** (205) 780-0500
**Source** Autotrader
**Stock #** 835346A
**Distance from Birmingham, AL**
8 Miles - Birmingham, AL

**Comp 3**   Updated Date: 03/21/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
**VIN** 1C4RJEBG9DC546523
**Dealership** Thornton Motors
**Telephone** (866) 330-9610
**Source** Dealer Ad
**Stock #** 1316
**Distance from Birmingham, AL**
105 Miles - Florence, AL

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 **CCC ONE** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Satellite Radio | ✓ | ✓ | ✓ | ✓ |
| Aluminum/Alloy Wheels | ✓ | ✓ | ✓ | ✓ |
| Electric Glass Roof | ✓ | ✓ | ✓ | ✓ |
| Skyview Roof | ✓ | ✗ | ✓ | ✗ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ | ✓ |
| Anti-lock Brakes (4) | ✓ | ✓ | ✓ | ✓ |
| 4-wheel Disc Brakes | ✓ | ✓ | ✓ | ✓ |
| Front Side Impact Air Bags | ✓ | ✓ | ✓ | ✓ |
| Head/Curtain Air Bags | ✓ | ✓ | ✓ | ✓ |
| Positraction | ✓ | ✓ | ✓ | ✓ |
| Backup Camera W/ Parking Sensors | ✓ | ✓ | ✓ | ✓ |
| Hands Free | ✓ | ✓ | ✓ | ✓ |
| Xenon Headlamps | ✓ | ✓ | ✓ | ✓ |
| Alarm | ✓ | ✓ | ✓ | ✓ |
| Traction Control | ✓ | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ | ✓ |
| Dual Mirrors | ✓ | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Body Side Moldings | ✓ | ✓ | ✓ | ✓ |
| Privacy Glass | ✓ | ✓ | ✓ | ✓ |
| Fog Lamps | ✓ | ✓ | ✓ | ✓ |
| Luggage/Roof Rack | ✓ | ✓ | ✓ | ✓ |
| Rear Spoiler | ✓ | ✓ | ✓ | ✓ |
| Rear Window Wiper | ✓ | ✓ | ✓ | ✓ |
| Signal Integrated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✗ | ✗ | ✗ |
| Metallic Paint | ✓ | | ✗ | ✓ |
| Rear Step Bumper | ✓ | ✗ | ✗ | ✗ |
| Trailer Hitch | ✓ | ✗ | ✓ | ✗ |
| Trailering Package | ✓ | ✗ | ✓ | ✗ |
| California Emissions | ✓ | ✓ | ✓ | ✓ |

| **List Price** | | $ 17,423 | $ 13,900 | $ 16,900 |
|---|---|---|---|---|
| **Adjustments:** | | | | |
| | Make/Model/Trim | | - $ 2,125 | |
| | Options | + $ 647 | + $ 50 | + $ 647 |
| | Mileage | - $ 189 | + $ 3,679 | + $ 402 |
| | Condition[1] | - $ 699 | - $ 699 | - $ 699 |

[1]The **Condition Adjustment** sets that comparable vehicle to Good condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 **CCC ONE** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# COMPARABLE VEHICLES

| Adjusted Comparable Value | $ 17,182 | $ 14,805 | $ 17,250 |
| --- | --- | --- | --- |

| Options | Loss Vehicle | Comp 4 | Comp 5 | Comp 6 |
| --- | --- | --- | --- | --- |
| Odometer | 72,742 | 104,321 | 79,075 | 80,986 |
| Automatic Transmission | ✓ | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Power Driver Seat | ✓ | ✓ | ✓ | ✓ |
| Power Passenger Seat | ✓ | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✗ | ✓ | ✗ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ | ✓ |
| Overhead Console | ✓ | ✓ | ✓ | ✓ |
| Memory Package | ✓ | ✓ | ✓ | ✓ |
| Navigation System | ✓ | ✓ | ✓ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ | ✓ |
| Message Center | ✓ | ✓ | ✓ | ✓ |
| Home Link | ✓ | ✓ | ✓ | ✓ |
| Remote Starter | ✓ | ✓ | ✓ | ✓ |
| Wood Interior Trim | ✗ | ✓ | ✗ | ✗ |
| Bucket Seats | ✓ | ✓ | ✓ | ✓ |
| Reclining/Lounge Seats | ✓ | ✗ | ✗ | ✗ |
| Leather Seats | ✓ | ✓ | ✓ | ✓ |
| Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Rear Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Ventilated Seats | ✗ | ✓ | ✗ | ✓ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ | ✓ |
| CD Player | ✓ | ✓ | ✓ | ✓ |
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ | ✓ |
| Auxiliary Audio Connection | ✓ | ✓ | ✓ | ✓ |

**Comp 4**   Updated Date: 04/06/2019
**2013 Jeep Grand Cherokee Overland Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
VIN 1C4RJECGXDC533407
**Dealership** Carl Hogan Toyota
**Telephone** (662) 241-6000
**Source** Autotrader
**Stock #** U3900A
**Distance from Birmingham, AL**
96 Miles - Columbus, MS

**Comp 5**   Updated Date: 05/18/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
VIN 1C4RJEBGXDC642516
**Dealership** Autonation Ram South Columbus
**Telephone** (706) 522-2089
**Source** Truecar
**Stock #** ""
**Distance from Birmingham, AL**
124 Miles - Columbus, GA

**Comp 6**   Updated Date: 03/19/2019
**2013 Jeep Grand Cherokee Overland Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
VIN 1C4RJECG1DC526197
**Dealership** Autonation Toyota Thornto
**Telephone** (888) 208-7462
**Source** Autotrader
**Stock #** DC526197
**Distance from Birmingham, AL**
122 Miles - Lithia Springs, GA

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, but may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca3ef64d3

 **CCC**⬡**ONE** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

## 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 4 | Comp 5 | Comp 6 |
|---|---|---|---|---|
| Satellite Radio | ✓ | ✓ | ✓ | ✓ |
| Aluminum/Alloy Wheels | ✓ | ✓ | ✓ | ✗ |
| 20" Or Larger Wheels | ✗ | ✗ | ✗ | ✓ |
| Electric Glass Roof | ✓ | ✓ | ✓ | ✓ |
| Skyview Roof | ✓ | ✓ | ✗ | ✓ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ | ✓ |
| Anti-lock Brakes (4) | ✓ | ✓ | ✓ | ✓ |
| 4-wheel Disc Brakes | ✓ | ✓ | ✓ | ✓ |
| Front Side Impact Air Bags | ✓ | ✓ | ✓ | ✓ |
| Head/Curtain Air Bags | ✓ | ✓ | ✓ | ✓ |
| Positraction | ✓ | ✓ | ✓ | ✓ |
| Backup Camera W/ Parking Sensors | ✓ | ✗ | ✓ | ✓ |
| Parking Sensors | ✗ | ✓ | ✗ | ✗ |
| Hands Free | ✓ | ✓ | ✓ | ✓ |
| Xenon Headlamps | ✓ | ✓ | ✓ | ✓ |
| Alarm | ✓ | ✓ | ✓ | ✓ |
| Traction Control | ✓ | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ | ✓ |
| Dual Mirrors | ✓ | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Body Side Moldings | ✓ | ✓ | ✓ | ✓ |
| Privacy Glass | ✓ | ✓ | ✓ | ✓ |
| Fog Lamps | ✓ | ✓ | ✓ | ✓ |
| Luggage/Roof Rack | ✓ | ✓ | ✓ | ✓ |
| Rear Spoiler | ✓ | ✓ | ✓ | ✓ |
| Rear Window Wiper | ✓ | ✓ | ✓ | ✓ |
| Signal Integrated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✗ | ✗ | ✗ |
| Metallic Paint | ✓ | ✗ | ✗ | ✗ |
| Three Stage Paint | ✗ | ✗ | ✓ | ✗ |
| Rear Step Bumper | ✓ | ✗ | ✗ | ✗ |
| Trailer Hitch | ✓ | ✓ | ✗ | ✓ |
| Trailering Package | ✓ | ✓ | ✗ | ✓ |
| California Emissions | ✓ | ✓ | ✓ | ✓ |
| **List Price** | | $ 16,002 | $ 16,997 | $ 17,844 |
| **Adjustments:** | | | | |
| Make/Model/Trim | | - $ 2,125 | | - $ 2,125 |

**Distance** is based upon a straight line between loss and comparable vehicle locations.

[1]The **Condition Adjustment** sets that comparable vehicle to Good condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential



# CCC ONE. MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

## 🔍 COMPARABLE VEHICLES

| | | | |
|---|---|---|---|
| Options | + $ 300 | + $ 647 | |
| Mileage | + $ 2,251 | + $ 374 | + $ 501 |
| Condition¹ | - $ 699 | - $ 699 | - $ 699 |

| Adjusted Comparable Value | $ 15,729 | $ 17,319 | $ 15,521 |
|---|---|---|---|

| Options | Loss Vehicle | Comp 7 | Comp 8 | Comp 9 |
|---|---|---|---|---|
| Advanced Technology | ✗ | ✗ | ✓ | ✗ |
| Odometer | 72,742 | 105,828 | 98,098 | 62,397 |
| Automatic Transmission | ✓ | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Power Driver Seat | ✓ | ✓ | ✓ | ✓ |
| Power Passenger Seat | ✓ | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✗ | ✗ | ✓ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ | ✓ |
| Overhead Console | ✓ | ✓ | ✓ | ✓ |
| Memory Package | ✓ | ✓ | ✓ | ✓ |
| Navigation System | ✓ | ✓ | ✓ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ | ✓ |
| Message Center | ✓ | ✓ | ✓ | ✓ |
| Home Link | ✓ | ✓ | ✓ | ✓ |
| Remote Starter | ✓ | ✓ | ✓ | ✓ |
| Bucket Seats | ✓ | ✓ | ✓ | ✓ |
| Reclining/Lounge Seats | ✓ | ✗ | ✗ | ✗ |
| Leather Seats | ✓ | ✓ | ✓ | ✓ |
| Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Rear Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Ventilated Seats | ✗ | ✗ | ✓ | ✓ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |

**Comp 7**   Updated Date: 03/11/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
VIN 1C4RJEBG5DC656856
**Dealership** Drivetime Veterans Parkwa
**Telephone** (706) 223-6480
**Source** Autotrader
**Stock #** 1030202476
**Distance from Birmingham, AL**
124 Miles - Columbus, GA

**Comp 8**   Updated Date: 05/04/2019
**2013 Jeep Grand Cherokee Limited Rwd 8 5.7l Gasoline Electronic Fuel Injection**
VIN 1C4RJEBT1DC574295
**Dealership** Alm Newnan (open 7 Days)
**Telephone** (855) 723-0572
**Source** Autotrader
**Stock #** DC574295
**Distance from Birmingham, AL**
117 Miles - Newnan, GA

**Comp 9**   Updated Date: 05/18/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
VIN 1C4RJEBG3DC596169
**Dealership** Alm Kennesaw (open 7 Days
**Telephone** (678) 213-5700
**Source** Autotrader
**Stock #** DC596169
**Distance from Birmingham, AL**
129 Miles - Kennesaw, GA

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca3ef64d3

 CCC ONE. MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

## 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 7 | Comp 8 | Comp 9 |
|---|:---:|:---:|:---:|:---:|
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| CD Player | ✔ | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✔ | ✔ | ✔ | ✔ |
| Satellite Radio | ✔ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ | ✔ |
| Electric Glass Roof | ✔ | ✔ | ✔ | ✔ |
| Skyview Roof | ✔ | ✔ | ✘ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ | ✔ |
| Positraction | ✔ | ✔ | ✔ | ✔ |
| Backup Camera W/ Parking Sensors | ✔ | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ | ✔ |
| Xenon Headlamps | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ | ✔ |
| Intelligent Cruise | ✘ | ✘ | ✔ | ✘ |
| Blind Spot Detection | ✘ | ✘ | ✔ | ✘ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Body Side Moldings | ✔ | ✔ | ✔ | ✔ |
| Tinted Glass | ✘ | ✘ | ✔ | ✔ |
| Privacy Glass | ✔ | ✔ | ✘ | ✘ |
| Fog Lamps | ✔ | ✔ | ✔ | ✔ |
| Luggage/Roof Rack | ✔ | ✔ | ✔ | ✔ |
| Rear Spoiler | ✔ | ✔ | ✔ | ✔ |
| Rear Window Wiper | ✔ | ✔ | ✔ | ✔ |
| Signal Integrated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✘ | ✘ |
| Metallic Paint | ✔ | ✘ | ✘ | ✘ |
| Rear Step Bumper | ✔ | ✘ | ✘ | ✘ |
| Trailer Hitch | ✔ | ✘ | ✔ | ✘ |
| Trailering Package | ✔ | ✘ | ✔ | ✘ |
| California Emissions | ✔ | ✔ | ✔ | ✔ |

advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

[1]The **Condition Adjustment** sets that comparable vehicle to Good condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 **CCC ONE.** MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# 🔍 COMPARABLE VEHICLES

| List Price | | $ 14,495 | $ 14,340 | $ 17,990 |
|---|---|---|---|---|
| **Adjustments:** | | | | |
| | Make/Model/Trim | | - $ 900 | |
| | Options | + $ 200 | - $ 15 | + $ 547 |
| | Mileage | + $ 2,333 | + $ 1,862 | - $ 546 |
| | Condition¹ | - $ 699 | - $ 699 | - $ 699 |
| **Adjusted Comparable Value** | | **$ 16,329** | **$ 14,588** | **$ 17,292** |

| Options | Loss Vehicle | Comp 10 | Comp 11 | Comp 12 |
|---|---|---|---|---|
| Advanced Technology | ✗ | ✗ | ✗ | ✓ |
| Odometer | 72,742 | 55,267 | 74,416 | 62,171 |
| Automatic Transmission | ✓ | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Power Driver Seat | ✓ | ✓ | ✓ | ✓ |
| Power Passenger Seat | ✓ | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✗ | ✗ | ✗ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ | ✓ |
| Overhead Console | ✓ | ✓ | ✓ | ✓ |
| Memory Package | ✓ | ✓ | ✓ | ✓ |
| Navigation System | ✓ | ✓ | ✓ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ | ✓ |
| Message Center | ✓ | ✓ | ✓ | ✓ |
| Home Link | ✓ | ✓ | ✓ | ✓ |
| Remote Starter | ✓ | ✓ | ✓ | ✓ |
| Wood Interior Trim | ✗ | ✗ | ✓ | ✓ |
| Bucket Seats | ✓ | ✓ | ✓ | ✓ |
| Reclining/Lounge Seats | ✓ | ✗ | ✗ | ✗ |
| Leather Seats | ✓ | ✓ | ✓ | ✓ |
| Heated Seats | ✓ | ✓ | ✓ | ✓ |

**Comp 10**    Updated Date: 05/11/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
**VIN** 1C4RJEBG9DC546246
**Dealership** Amazing Luxury Cars
**Telephone** (770) 425-3500
**Source** Truecar
**Stock #** M546246
**Distance from Birmingham, AL**
130 Miles - Marietta, GA

**Comp 11**    Updated Date: 05/20/2019
**2013 Jeep Grand Cherokee Limited Rwd 8 5.7l Gasoline Electronic Fuel Injection**
**VIN** 1C4RJEBT3DC547308
**Dealership** Jim Ellis Mazda Of Mariet
**Telephone** (770) 590-4450
**Source** Autotrader
**Stock #** Z60610A
**Distance from Birmingham, AL**
130 Miles - Marietta, GA

**Comp 12**    Updated Date: 04/06/2019
**2013 Jeep Grand Cherokee Overland Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
**VIN** 1C4RJECG8DC526309
**Dealership** Gravity Autos Marietta
**Telephone** (770) 629-6060
**Source** Autotrader
**Stock #** 526309
**Distance from Birmingham, AL**
130 Miles - Marietta, GA

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 CCC ONE. MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 10 | Comp 11 | Comp 12 |
|---|---|---|---|---|
| Rear Heated Seats | ✓ | ✓ | ✓ | ✓ |
| Ventilated Seats | ✗ | ✗ | ✗ | ✓ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ | ✓ |
| CD Player | ✓ | ✓ | ✓ | ✓ |
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ | ✓ |
| Auxiliary Audio Connection | ✓ | ✓ | ✓ | ✓ |
| Satellite Radio | ✓ | ✓ | ✓ | ✓ |
| Aluminum/Alloy Wheels | ✓ | ✓ | ✓ | ✓ |
| Electric Glass Roof | ✓ | ✓ | ✓ | ✓ |
| Skyview Roof | ✓ | ✓ | ✗ | ✓ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ | ✓ |
| Anti-lock Brakes (4) | ✓ | ✓ | ✓ | ✓ |
| 4-wheel Disc Brakes | ✓ | ✓ | ✓ | ✓ |
| Front Side Impact Air Bags | ✓ | ✓ | ✓ | ✓ |
| Head/Curtain Air Bags | ✓ | ✓ | ✓ | ✓ |
| Positraction | ✓ | ✓ | ✓ | ✓ |
| Backup Camera W/ Parking Sensors | ✓ | ✗ | ✓ | ✓ |
| Parking Sensors | ✗ | ✓ | ✗ | ✗ |
| Hands Free | ✓ | ✓ | ✓ | ✓ |
| Xenon Headlamps | ✓ | ✓ | ✓ | ✓ |
| Alarm | ✓ | ✓ | ✓ | ✓ |
| Traction Control | ✓ | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ | ✓ |
| Intelligent Cruise | ✗ | ✗ | ✗ | ✓ |
| Blind Spot Detection | ✗ | ✗ | ✗ | ✓ |
| Dual Mirrors | ✓ | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Body Side Moldings | ✓ | ✓ | ✓ | ✓ |
| Privacy Glass | ✓ | ✓ | ✓ | ✓ |
| Fog Lamps | ✓ | ✓ | ✓ | ✓ |
| Luggage/Roof Rack | ✓ | ✓ | ✓ | ✓ |
| Rear Spoiler | ✓ | ✓ | ✓ | ✓ |
| Rear Window Wiper | ✓ | ✓ | ✓ | ✓ |
| Signal Integrated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✗ | ✗ | ✗ |
| Metallic Paint | ✓ | ✗ | ✓ | ✗ |

value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

[1]The **Condition Adjustment** sets that comparable vehicle to Good condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 **MARKET VALUATION REPORT**

Owner: Philips, Walker
Claim: 035577689000000001001

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 10 | Comp 11 | Comp 12 |
|---|---|---|---|---|
| Rear Step Bumper | ✓ | ✗ | ✗ | ✗ |
| Trailer Hitch | ✓ | ✗ | ✗ | ✓ |
| Trailering Package | ✓ | ✗ | ✗ | ✓ |
| California Emissions | ✓ | ✓ | ✓ | ✓ |
| | | | | |
| **List Price** | | $ 18,949 | $ 17,969 | $ 19,639 |
| **Adjustments:** | | | | |
| Make/Model/Trim | | | - $ 900 | - $ 2,125 |
| Options | | + $ 300 | + $ 647 | - $ 162 |
| Mileage | | - $ 922 | + $ 92 | - $ 558 |
| Condition¹ | | - $ 699 | - $ 699 | - $ 699 |
| **Adjusted Comparable Value** | | **$ 17,628** | **$ 17,109** | **$ 16,095** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

CCC ONE. MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by GARRISON
PROPERTY & CASUALTY, A USAA SUBSIDIARY, and no other person or entity is
entitled to or should rely upon this Market Valuation Report and/or any of its contents.
CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value
include Alabama Administrative Code
482-1-125.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 CCC ONE. MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

## EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT

CCC provides GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY information reported by Experian regarding the **2013 Jeep Grand Cherokee (1C4RJEBG9DC520360)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**
✓ No Event Found
⛔ Event Found
🚫 Information Needed

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ✓ | No Abandoned Record Found |
| Damaged | ✓ | No Damaged Record Found |
| Fire Damage | ✓ | No Fire Damage Record Found |
| Grey Market | ✓ | No Grey Market Record Found |
| Hail Damage | ✓ | No Hail Damage Record Found |
| Insurance Loss | ✓ | No Insurance Loss Record Found |
| Junk | ✓ | No Junk Record Found |
| Rebuilt | ✓ | No Rebuilt Record Found |
| Salvage | ✓ | No Salvage Record Found |

**TITLE CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✓ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ | No Frame Damage Record Found |
| Major Damage Incident | ✓ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ | No Odometer Problem Record Found |
| Recycled | ✓ | No Recycled Record Found |
| Water Damage | ✓ | No Water Damage Record Found |
| Salvage Auction | ✓ | No Salvage Auction Record Found |

**EVENT CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | ✓ | No Accident Record Found |
| Corrected Title | ✓ | No Corrected Title Record Found |
| Driver Education | ✓ | No Driver Education Record Found |
| Fire Damage Incident | ✓ | No Fire Damage Incident Record Found |
| Lease | ✓ | No Lease Record Found |
| Lien | ✓ | No Lien Record Found |
| Livery Use | ✓ | No Livery Use Record Found |
| Government Use | ✓ | No Government Use Record Found |
| Police Use | ✓ | No Police Use Record Found |
| Fleet | ✓ | No Fleet Record Found |
| Rental | ✓ | No Rental Record Found |
| Fleet and/or Rental | ✓ | No Fleet and/or Rental Record Found |
| Repossessed | ✓ | No Repossessed Record Found |
| Taxi use | ✓ | No Taxi use Record Found |
| Theft | ✓ | No Theft Record Found |
| Fleet and/or Lease | ✓ | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ | No Duplicate Title Record Found |

**VEHICLE INFORMATION**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no vehicle information that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

 CCC ONE.  MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

### 📖 FULL HISTORY REPORT RUN DATE: 05/23/2019

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 01/22/2013 | BIRMINGHAM, AL | 44 | Motor Vehicle Dept. | TITLE |
| 07/09/2013 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/25/2013 | BIRMINGHAM, AL | 4857 | Motor Vehicle Dept. | TITLE |
| 07/25/2014 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 07/17/2015 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 07/28/2016 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/18/2016 | BIRMINGHAM, AL | 35936 | Motor Vehicle Dept. | TITLE |
| 07/19/2017 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/29/2018 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

0901119ca3ef64d3

USAA Confidential

 **CCC⬤ONE.** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

## ⬤ NHTSA VEHICLE RECALL

**NHTSA Campaign ID :** 14V104000

**Mfg's Report Date :** MAR 04, 2014

**Component :** SERVICE BRAKES, HYDRAULIC

**Potential Number Of Units Affected :** 18,690

**Summary :** Chrysler Group LLC (Chrysler) is recalling certain model year 2012-2013 Dodge Durango and Jeep Grand Cherokee vehicles manufactured October 11, 2011, through October 1, 2012. Under certain braking events, the Ready Alert Braking System (RAB) may result in the driver experiencing a hard brake pedal feel.

**Consequence :** If the driver experiences a hard brake pedal, the driver may not push the pedal as intended, lengthening the distance needed to stop the vehicle and increasing the risk of a crash

**Remedy :** Chrysler will notify owners, and dealers will update the ABS module software, free of charge. The recall is expected to begin in March 2014. Owners may contact Chrysler at 1-800-853-1403. Chrysler's number associated with this recall is P05.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

---

**NHTSA Campaign ID :** 14V391000

**Mfg's Report Date :** JUL 01, 2014

**Component :** ELECTRICAL SYSTEM:WIRING

**Potential Number Of Units Affected :** 651130

**Summary :** Chrysler Group LLC (Chrysler) is recalling certain model year 2011-2014 Dodge Durango and Jeep Grand Cherokee vehicles manufactured January 5, 2010, through December 11, 2013. In the affected vehicles, the wiring for the vanity lamp in the sun visor may short circuit, after a service repair is performed.

**Consequence :** If the vanity lamp wiring shorts, there is an increased risk of fire.

**Remedy :** Chrysler will notify owners, and dealers will inspect and repair any damaged wiring, and install a new sun visor that properly routes the wire, free of charge. The recall is expected to begin in August 2014. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is P36.

**Dates Of Manufacture :** JAN 04, 2010 to DEC 10, 2013

**Manufacturer Recall No. :** P36

---

**NHTSA Campaign ID :** 14V154000

**Mfg's Report Date :** APR 01, 2014

**Component :** SERVICE BRAKES , SERVICE BRAKES, HYDRAULIC

**Potential Number Of Units Affected :** 644,354

The National Highway Traffic Safety Administration has issued 8 safety related recall notices that may apply to the above valued vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

## CCC ONE. MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

**Summary :** Chrysler Group LLC (Chrysler) is recalling certain model year 2011-2014 Jeep Grand Cherokee and Dodge Durango vehicles manufactured from January 5, 2010, through September 8, 2013. The subject vehicles have a brake booster with a center shell that may corrode and allow water to get inside.

**Consequence :** The water inside could freeze and limit the braking ability of the vehicle, increasing the risk of a crash.

**Remedy :** Chrysler will notify owners, and dealers will add a water diverter shield to the booster after the booster has been tested to confirm it can hold an acceptable amount of vacuum pressure. If the booster inspection confirms an unacceptable loss of vacuum pressure, the booster will be replaced. Repairs will be made free of charge. The recall is expected to begin in May 2014. Owners may contact Chrysler at 1-800-853-1403. Chrysler's recall campaign number is P14.

---

**NHTSA Campaign ID :** 15V115000

**Mfg's Report Date :** FEB 27, 2015

**Component :** ELECTRICAL SYSTEM

**Potential Number Of Units Affected :** 338,216

**Summary :** Chrysler (FCA US LLC) is recalling certain model year 2012-2013 Jeep Grand Cherokee vehicles manufactured September 17, 2010, to August 19, 2013, and equipped with a 3.6, 5.7 or 6.4 liter engine, and 2012-2013 Dodge Durango vehicles manufactured January 18, 2011, to August 19, 2013, and equipped with a 3.6 or 5.7 liter engine. In the affected vehicles, the fuel pump relay inside the Totally Integrated Power Module (TIPM-7) may fail, causing the vehicle to stall without warning.

**Consequence :** A vehicle stall increases the risk of a crash.

**Remedy :** Chrysler will notify owners, and dealers will replace the fuel pump relay with one external to the TIPM. The recall is expected to begin April 24, 2015. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is R09. Note: This recall is an expansion of recall 14V-530.

---

**NHTSA Campaign ID :** 14V634000

**Mfg's Report Date :** OCT 08, 2014

**Potential Number Of Units Affected :** 434,600

**Summary :** Chrysler Group LLC (Chrysler) is recalling certain model year 2011-2014 Chrysler 300, Dodge Charger, Challenger, and Durango; and 2012-2014 Jeep Grand Cherokee vehicles manufactured April 22, 2010, to January 2, 2014, and equipped with a 3.6L engine and a 160 amp alternator. In the affected vehicles, the alternator may suddenly fail.

**Consequence :** If the alternator fails, the vehicle may stall without warning, increasing the risk of a crash.

**Remedy :** Chrysler has notified owners, and dealers will replace the alternator, free of charge. The recall began on February 27, 2015. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is P60.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

# CCC ONE. MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

**NHTSA Campaign ID :** 15V879000

**Mfg's Report Date :** DEC 28, 2015

**Component :** ELECTRICAL SYSTEM, INTERIOR LIGHTING

**Potential Number Of Units Affected :** 389,252

**Summary :** Chrysler (FCA US LLC) is recalling certain model year 2011-2013 Dodge Durango and Jeep Grand Cherokee vehicles manufactured December 3, 2009, to September 1, 2012. In the affected vehicles, the wiring for the vanity lamp in the sun visor may short circuit, after having been remedied for a prior recall for the vanity lamp wiring. This recall is also addressing certain vehicles that have not been remedied under that prior recall.

**Consequence :** The vanity lamp wiring may short, increasing the risk of a vehicle fire.

**Remedy :** Chrysler will notify owners, and dealer will install clearance for sun visor wiring, protection from sharp edges, and replace the sun visor, free of charge. The recall began on July 28, 2016. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is R71.

---

**NHTSA Campaign ID :** 17V435000

**Mfg's Report Date :** July 10, 2017

**Potential Number Of Units Affected :** 442,214

**Summary :** Chrysler (FCA US LLC) is recalling certain model year 2011-2014 Dodge Challenger, Dodge Charger, Chrysler 300, Dodge Durango, and 2012-2014 Jeep Grand Cherokee vehicles. The affected vehicles have electro-hydraulic power steering (EHPS) and are equipped with a 5.7L or a 3.6L engine and a 160, 180 or 220 amp alternator. In the affected vehicles, the alternator may suddenly fail.

**Consequence :** If the alternator fails, the vehicle may stall without warning, increasing the risk of a crash. There is also the possibility that the alternator may short circuit, increasing the risk of a fire.

**Remedy :** Chrysler will notify owners, and dealers will inspect the alternator and depending on the part number, will replace the alternator, if necessary, free of charge. The recall is expected to begin on August 24, 2017. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is T36.

---

**NHTSA Campaign ID :** 17V572000

**Mfg's Report Date :** September 18, 2017

**Component :** SERVICE BRAKES, SERVICE BRAKES, HYDRAULIC

**Potential Number Of Units Affected :** 646,394

**Summary :** Chrysler (FCA US LLC) is recalling certain 2011-2014 Dodge Durango and Jeep Grand Cherokee vehicles. The affected vehicles had brake booster shields installed under a previous campaign to prevent water from entering the brake booster and limiting braking ability. This recall is to verify that the brake booster shield installation was performed properly.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential

CCC ONE. MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

**Consequence :** If the brake booster shield was not installed properly, the vehicle's braking ability may be reduced, increasing the risk of a crash.

**Remedy :** Chrysler will notify owners, and dealers will inspect the brake booster shield, correcting the installation as necessary, free of charge. The recall is expected to begin November 7, 2017. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is T59.



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca3ef64d3

USAA Confidential


ELECTRONICALLY FILED
9/16/2019 10:18 AM
01-CV-2019-904168.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

# EXHIBIT C



Garrison Property and Casualty Insurance
Company

# YOUR RECENT
# ACCIDENT

WALKER T PHILIPS
Redacted


 ## Contact Us about Your Accident

June 3, 2019

Dear Mr. Philips,

We'd like to discuss the below referenced accident with you at your earliest convenience:

| | |
|---|---|
| **Policyholder:** | Walker T Philips |
| **Claim number:** | 035577689–001 |
| **Date of loss:** | May 19, 2019 |
| **Loss location:** | Birmingham, Alabama |

## How to Contact Us

Please send any correspondence or questions to us using one of the following options and include the claim number above on each page mailed or faxed:

|   | | |
|---|---|---|
| ✉ | **Address:** | Salvage Recovery<br>P.O. Box 659474<br>San Antonio, TX 78265 |
| 🖨 | **Fax:** | 1-800-531-8669 |
| 📞 | **Phone:** | 1-210-531-8722 ext 74671 |

Sincerely,

*John Rivera*

John Rivera
Total Loss Department
Garrison Property and Casualty Insurance Company

Garrison Property and Casualty Insurance Company, a subsidiary of USAA Casualty Insurance Company, is authorized to use the USAA logo, a registered trademark of United Services Automobile Association.

Enclosed:   Valuation Estimate

035577689 - 001 - 9061 - 20

54412-0318

Page 1 of 1



# MARKET VALUATION REPORT

*Prepared for GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY*



## REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Philips, Walker |
| | Redacted |
| Loss Vehicle | 2013 Jeep Grand Cherokee Limited RWD |
| Loss Incident Date | 05/19/2019 |
| Claim Reported | 05/31/2019 |

### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 93205940 |
| Claim Reference | 03557768900000001001 |
| Adjuster | Gault, Geoffrey |
| Odometer | 72,742 |
| Last Updated | 05/31/2019 04:33 PM |

### VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 17,250.00** |
| Condition Adjustment | + $ 152.00 |
| **Adjusted Vehicle Value** | **$ 17,402.00** |
| Vehicular Tax (4.375%) | + $ 761.34 |
| Tax reflects applicable state, county and municipal taxes. | |

| **Total** | **$ 18,163.34** |
|---|---|

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

---

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY.

Loss vehicle has 20% fewer than average mileage of 90,600.

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology............................ 2
Vehicle Information.................................. 3
Vehicle Condition.................................... 7
Comparable Vehicles............................... 8
Valuation Notes...................................... 10
Supplemental Information....................... 11

---

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

**CCC⬭ONE** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# VALUATION METHODOLOGY

## How was the valuation determined?



**CLAIM INSPECTION**

GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

**SEARCH FOR COMPARABLES**

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



**CALCULATE BASE VEHICLE VALUE**

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the straight average of the adjusted values of the comparable vehicles.



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca40ab764

 CCC ONE. MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# 🚙 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | BIRMINGHAM, AL 35223 |
| VIN | 1C4RJEBG9DC520360 |
| Year | 2013 |
| Make | Jeep |
| Model | Grand Cherokee |
| Trim | Limited |
| Body Style | RWD |
| Body Type | Sports Utility |
| Engine - | |
| Cylinders | 6 |
| Displacement | 3.6L |
| Fuel Type | Flex Fuel |
| Carburation | Electronic Fuel Injection |
| Transmission | Automatic Transmission |
| Curb Weight | 4700 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE HISTORY SUMMARY

| | | |
|---|---|---|
| CCC VINguard® | 1 Collision Estimate | 05/23/2019 |
| Experian AutoCheck | No Title Problem Found | |
| National Highway Traffic Safety Administration | 8 Recalls | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

 **MARKET VALUATION REPORT**

| Owner: Philips, Walker
| Claim: 035577689000000001001

# 🚙 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| Odometer | 72,742 | |
| Transmission | Automatic Transmission | ✓ |
| Power | Power Steering | ✓ |
| | Power Brakes | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Power Driver Seat | ✓ |
| | Power Passenger Seat | ✓ |
| Decor/Convenience | Air Conditioning | ✓ |
| | Climate Control | ✓ |
| | Tilt Wheel | ✓ |
| | Cruise Control | ✓ |
| | Rear Defogger | ✓ |
| | Intermittent Wipers | ✓ |
| | Console/Storage | ✓ |
| | Overhead Console | ✓ |
| | Memory Package | ✓ |
| | Navigation System | ✓ |
| | Keyless Entry | ✓ |
| | Telescopic Wheel | ✓ |
| | Message Center | ✓ |
| | Home Link | ✓ |
| | Remote Starter | ✓ |
| Seating | Bucket Seats | ✓ |
| | Reclining/Lounge Seats | 🗎 |
| | Leather Seats | ✓ |
| | Heated Seats | ✓ |
| | Rear Heated Seats | ✓ |
| Radio | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |

To the left is the equipment of the loss vehicle that GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY provided to CCC.

✓ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🗎 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential



**MARKET VALUATION REPORT** | Owner: Philips, Walker
Claim: 035577689000000001001

# 🚌 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| | Search/Seek | ✔ |
| | CD Player | ✔ |
| | Steering Wheel Touch Controls | ✔ |
| | Auxiliary Audio Connection | ✔ |
| | Satellite Radio | ✔ |
| **Wheels** | Aluminum/Alloy Wheels | ✔ |
| **Roof** | Electric Glass Roof | ✔ |
| | Skyview Roof | ✔ |
| **Safety/Brakes** | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Head/Curtain Air Bags | ✔ |
| | Positraction | ✔ |
| | Backup Camera W/ Parking Sensors | ✔ |
| | Hands Free | ✔ |
| | Xenon Headlamps | ✔ |
| | Alarm | ✔ |
| | Traction Control | ✔ |
| | Stability Control | ✔ |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
| | Heated Mirrors | ✔ |
| | Body Side Moldings | ✔ |
| | Privacy Glass | ✔ |
| | Fog Lamps | ✔ |
| | Luggage/Roof Rack | ✔ |
| | Rear Spoiler | ✔ |
| | Rear Window Wiper | ✔ |
| | Signal Integrated Mirrors | ✔ |
| | Clearcoat Paint | 📄 |
| | Metallic Paint | 📄 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

**CCC ONE.** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# 🚙 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| Other - Trucks | | |
|---|---|---|
| | Rear Step Bumper | 📋 |
| | Trailer Hitch | 📋 |
| | Trailering Package | 📋 |
| | California Emissions | ✔ |

USAA Confidential

0901119ca40ab764

 CCC ONE. MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# 🚘 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| Mechanical | VERY GOOD | ENGINE BAY CLEAN, NO SIG LEAKS OR SEEPAGE | $ 122 |
| Tires | VERY GOOD | TIRES AVG 8/32 | $ 30 |
| Paint | GOOD | SOME CHIPS AND BUBBLING IN HOOD | $ 0 |
| Body | GOOD | DENTS AND DINGS, RT FRT DOOR | $ 0 |
| Glass | GOOD | SOME CHIPS AND PITTING IN WINDSHIELD | $ 0 |
| Interior | GOOD | INTERIOR DIRTY SOME STAINS AND WEAR. | $ 0 |
| **Total Condition Adjustments** | | | **$ 152** |

GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Good condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

 CCC ONE. MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 72,742 | 69,163 | 79,503 | 79,075 |
| Automatic Transmission | ✔ | ✔ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ | ✔ |
| Power Driver Seat | ✔ | ✔ | ✔ | ✔ |
| Power Passenger Seat | ✔ | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ | ✔ |
| Overhead Console | ✔ | ✔ | ✔ | ✔ |
| Memory Package | ✔ | ✔ | ✔ | ✔ |
| Navigation System | ✔ | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ | ✔ |
| Telescopic Wheel | ✔ | ✔ | ✔ | ✔ |
| Message Center | ✔ | ✔ | ✔ | ✔ |
| Home Link | ✔ | ✔ | ✔ | ✔ |
| Remote Starter | ✔ | ✔ | ✔ | ✔ |
| Wood Interior Trim | ✘ | ✔ | ✘ | ✘ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ | ✘ |
| Leather Seats | ✔ | ✔ | ✔ | ✔ |
| Heated Seats | ✔ | ✔ | ✔ | ✔ |
| Rear Heated Seats | ✔ | ✔ | ✔ | ✔ |
| AM Radio | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| CD Player | ✔ | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✔ | ✔ | ✔ | ✔ |
| Satellite Radio | ✔ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ | ✔ |
| Electric Glass Roof | ✔ | ✔ | ✔ | ✔ |

**Comp 1**   Updated Date: 04/30/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
**VIN** 1C4RJEBG8DC546318
**Dealership** Tuscaloosa Chevrolet
**Telephone** (205) 758-4451
**Source** Autotrader
**Stock #** U46318
**Distance from Birmingham, AL**
43 Miles - Cottondale, AL

**Comp 2**   Updated Date: 03/21/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
**VIN** 1C4RJEBG9DC546523
**Dealership** Thornton Motors
**Telephone** (866) 330-9610
**Source** Dealer Ad
**Stock #** 1316
**Distance from Birmingham, AL**
105 Miles - Florence, AL

**Comp 3**   Updated Date: 05/18/2019
**2013 Jeep Grand Cherokee Limited Rwd 6 3.6l Flex Fuel Electronic Fuel Injection**
**VIN** 1C4RJEBGXDC642516
**Dealership** Autonation Chrysler Dodge
**Telephone** (855) 302-5265
**Source** Autotrader
**Stock #** DC642516
**Distance from Birmingham, AL**
124 Miles - Columbus, GA

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

 **CCC ONE** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|:---:|:---:|:---:|:---:|
| Skyview Roof | ✔ | ■ | ✘ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ | ✔ |
| Positraction | ✔ | ✔ | ✔ | ✔ |
| Backup Camera W/ Parking Sensors | ✔ | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ | ✔ |
| Xenon Headlamps | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Body Side Moldings | ✔ | ✔ | ✔ | ✔ |
| Privacy Glass | ✔ | ✔ | ✔ | ✔ |
| Fog Lamps | ✔ | ✔ | ✔ | ✔ |
| Luggage/Roof Rack | ✔ | ✔ | ✔ | ✔ |
| Rear Spoiler | ✔ | ✔ | ✔ | ✔ |
| Rear Window Wiper | ✔ | ✔ | ✔ | ✔ |
| Signal Integrated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✘ | ✘ |
| Metallic Paint | ✔ | ✔ | ✔ | ✘ |
| Three Stage Paint | ✘ | ✘ | ✘ | ✔ |
| Rear Step Bumper | ✔ | ✘ | ✘ | ✘ |
| Trailer Hitch | ✘ | ✘ | ✘ | ✘ |
| Trailering Package | ✔ | ✘ | ✘ | ✘ |
| California Emissions | ✔ | ✔ | ✔ | ✔ |
| | | | | |
| **List Price** | | $ 17,423 | $ 16,900 | $ 16,997 |
| **Adjustments:** | | | | |
| Options | | + $ 647 | + $ 647 | + $ 647 |
| Mileage | | - $ 189 | + $ 402 | + $ 374 |
| Condition[1] | | - $ 699 | - $ 699 | - $ 699 |
| **Adjusted Comparable Value** | | **$ 17,182** | **$ 17,250** | **$ 17,319** |

[1]The **Condition Adjustment** sets that comparable vehicle to Good condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

CCC ONE. MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# VALUATION NOTES

05/31/2019 16:31 - INSURER DIRECTED CCC ON THE CRITERIA AND/OR VEHICLES TO USE AS COMPARABLE VEHICLES FOR THIS VALUATION. THE VALUATION DOES NOT NECESSARILY REFLECT CCC'S OPINION AS TO THE MARKET VALUE OF THE LOSS VEHICLE.

This Market Valuation Report has been prepared exclusively for use by GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Alabama Administrative Code 482-1-125.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

 **MARKET VALUATION REPORT**

Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

**Collision History Information:**

COLLISION INCIDENT REPORTED BY GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY ON 05/23/2019

Claim #: 035577689000000001001 in BIRMINGHAM, AL

Repair Estimate: 11669.84                    Miles: 072742

Damage Location:        TOTAL LOSS

                       UNKNOWN

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

 **CCC ONE** MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

## EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT

| TITLE CHECK | RESULTS FOUND |
|---|---|
| Abandoned | ✓ No Abandoned Record Found |
| Damaged | ✓ No Damaged Record Found |
| Fire Damage | ✓ No Fire Damage Record Found |
| Grey Market | ✓ No Grey Market Record Found |
| Hail Damage | ✓ No Hail Damage Record Found |
| Insurance Loss | ✓ No Insurance Loss Record Found |
| Junk | ✓ No Junk Record Found |
| Rebuilt | ✓ No Rebuilt Record Found |
| Salvage | ✓ No Salvage Record Found |

| EVENT CHECK | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | ✓ No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ No Frame Damage Record Found |
| Major Damage Incident | ✓ No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ No Odometer Problem Record Found |
| Recycled | ✓ No Recycled Record Found |
| Water Damage | ✓ No Water Damage Record Found |
| Salvage Auction | ✓ No Salvage Auction Record Found |

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | ▤ Accident Record Found |
| Corrected Title | ✓ No Corrected Title Record Found |
| Driver Education | ✓ No Driver Education Record Found |
| Fire Damage Incident | ✓ No Fire Damage Incident Record Found |
| Lease | ✓ No Lease Record Found |
| Lien | ✓ No Lien Record Found |
| Livery Use | ✓ No Livery Use Record Found |
| Government Use | ✓ No Government Use Record Found |
| Police Use | ✓ No Police Use Record Found |
| Fleet | ✓ No Fleet Record Found |
| Rental | ✓ No Rental Record Found |
| Fleet and/or Rental | ✓ No Fleet and/or Rental Record Found |
| Repossessed | ✓ No Repossessed Record Found |
| Taxi use | ✓ No Taxi use Record Found |
| Theft | ✓ No Theft Record Found |
| Fleet and/or Lease | ✓ No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ No Duplicate Title Record Found |

CCC provides GARRISON PROPERTY & CASUALTY, A USAA SUBSIDIARY information reported by Experian regarding the **2013 Jeep Grand Cherokee (1C4RJEBG9DC520360)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**
✓ No Event Found
⊖ Event Found
▤ Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
INFORMATION FOUND
AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca40ab764

CCC ONE. MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

 **FULL HISTORY REPORT RUN DATE: 05/31/2019**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 01/22/2013 | BIRMINGHAM, AL | 44 | Motor Vehicle Dept. | TITLE |
| 07/09/2013 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/25/2013 | BIRMINGHAM, AL | 4857 | Motor Vehicle Dept. | TITLE |
| 07/25/2014 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 07/17/2015 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 07/28/2016 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/18/2016 | BIRMINGHAM, AL | 35936 | Motor Vehicle Dept. | TITLE |
| 07/19/2017 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/29/2018 | BIRMINGHAM, AL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/19/2019 | AL | | Police Report | FRONT IMPACT COLLISION |
| 05/19/2019 | BIRMINGHAM, AL | | Police Report | ACCIDENT REPORTED |
| 05/19/2019 | AL | | Police Report | VEHICLE WAS TOWED |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

**CCC ONE** | MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

 **CCC ONE.** MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

## NHTSA VEHICLE RECALL

The National Highway Traffic Safety Administration has issued 8 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 14V104000

**Mfg's Report Date :** MAR 04, 2014

**Component :** SERVICE BRAKES, HYDRAULIC

**Potential Number Of Units Affected :** 18,690

**Summary :** Chrysler Group LLC (Chrysler) is recalling certain model year 2012-2013 Dodge Durango and Jeep Grand Cherokee vehicles manufactured October 11, 2011, through October 1, 2012. Under certain braking events, the Ready Alert Braking System (RAB) may result in the driver experiencing a hard brake pedal feel.

**Consequence :** If the driver experiences a hard brake pedal, the driver may not push the pedal as intended, lengthening the distance needed to stop the vehicle and increasing the risk of a crash

**Remedy :** Chrysler will notify owners, and dealers will update the ABS module software, free of charge. The recall is expected to begin in March 2014. Owners may contact Chrysler at 1-800-853-1403. Chrysler's number associated with this recall is P05.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

---

**NHTSA Campaign ID :** 14V391000

**Mfg's Report Date :** JUL 01, 2014

**Component :** ELECTRICAL SYSTEM:WIRING

**Potential Number Of Units Affected :** 651130

**Summary :** Chrysler Group LLC (Chrysler) is recalling certain model year 2011-2014 Dodge Durango and Jeep Grand Cherokee vehicles manufactured January 5, 2010, through December 11, 2013. In the affected vehicles, the wiring for the vanity lamp in the sun visor may short circuit, after a service repair is performed.

**Consequence :** If the vanity lamp wiring shorts, there is an increased risk of fire.

**Remedy :** Chrysler will notify owners, and dealers will inspect and repair any damaged wiring, and install a new sun visor that properly routes the wire, free of charge. The recall is expected to begin in August 2014. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is P36.

**Dates Of Manufacture :** JAN 04, 2010 to DEC 10, 2013

**Manufacturer Recall No. :** P36

---

**NHTSA Campaign ID :** 14V154000

**Mfg's Report Date :** APR 01, 2014

**Component :** SERVICE BRAKES , SERVICE BRAKES, HYDRAULIC

**Potential Number Of Units Affected :** 644,354

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

CCC ONE. MARKET VALUATION REPORT | Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

**Summary :** Chrysler Group LLC (Chrysler) is recalling certain model year 2011-2014 Jeep Grand Cherokee and Dodge Durango vehicles manufactured from January 5, 2010, through September 8, 2013. The subject vehicles have a brake booster with a center shell that may corrode and allow water to get inside.

**Consequence :** The water inside could freeze and limit the braking ability of the vehicle, increasing the risk of a crash.

**Remedy :** Chrysler will notify owners, and dealers will add a water diverter shield to the booster after the booster has been tested to confirm it can hold an acceptable amount of vacuum pressure. If the booster inspection confirms an unacceptable loss of vacuum pressure, the booster will be replaced. Repairs will be made free of charge. The recall is expected to begin in May 2014. Owners may contact Chrysler at 1-800-853-1403. Chrysler's recall campaign number is P14.

---

**NHTSA Campaign ID :** 15V115000

**Mfg's Report Date :** FEB 27, 2015

**Component :** ELECTRICAL SYSTEM

**Potential Number Of Units Affected :** 338,216

**Summary :** Chrysler (FCA US LLC) is recalling certain model year 2012-2013 Jeep Grand Cherokee vehicles manufactured September 17, 2010, to August 19, 2013, and equipped with a 3.6, 5.7 or 6.4 liter engine, and 2012-2013 Dodge Durango vehicles manufactured January 18, 2011, to August 19, 2013, and equipped with a 3.6 or 5.7 liter engine. In the affected vehicles, the fuel pump relay inside the Totally Integrated Power Module (TIPM-7) may fail, causing the vehicle to stall without warning.

**Consequence :** A vehicle stall increases the risk of a crash.

**Remedy :** Chrysler will notify owners, and dealers will replace the fuel pump relay with one external to the TIPM. The recall is expected to begin April 24, 2015. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is R09. Note: This recall is an expansion of recall 14V-530.

---

**NHTSA Campaign ID :** 14V634000

**Mfg's Report Date :** OCT 08, 2014

**Potential Number Of Units Affected :** 434,600

**Summary :** Chrysler Group LLC (Chrysler) is recalling certain model year 2011-2014 Chrysler 300, Dodge Charger, Challenger, and Durango; and 2012-2014 Jeep Grand Cherokee vehicles manufactured April 22, 2010, to January 2, 2014, and equipped with a 3.6L engine and a 160 amp alternator. In the affected vehicles, the alternator may suddenly fail.

**Consequence :** If the alternator fails, the vehicle may stall without warning, increasing the risk of a crash.

**Remedy :** Chrysler has notified owners, and dealers will replace the alternator, free of charge. The recall began on February 27, 2015. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is P60.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential

CCC ONE  MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

**NHTSA Campaign ID :** 15V879000

**Mfg's Report Date :** DEC 28, 2015

**Component :** ELECTRICAL SYSTEM, INTERIOR LIGHTING

**Potential Number Of Units Affected :** 389,252

**Summary :** Chrysler (FCA US LLC) is recalling certain model year 2011-2013 Dodge Durango and Jeep Grand Cherokee vehicles manufactured December 3, 2009, to September 1, 2012. In the affected vehicles, the wiring for the vanity lamp in the sun visor may short circuit, after having been remedied for a prior recall for the vanity lamp wiring. This recall is also addressing certain vehicles that have not been remedied under that prior recall.

**Consequence :** The vanity lamp wiring may short, increasing the risk of a vehicle fire.

**Remedy :** Chrysler will notify owners, and dealer will install clearance for sun visor wiring, protection from sharp edges, and replace the sun visor, free of charge. The recall began on July 28, 2016. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is R71.

---

**NHTSA Campaign ID :** 17V435000

**Mfg's Report Date :** July 10, 2017

**Potential Number Of Units Affected :** 442,214

**Summary :** Chrysler (FCA US LLC) is recalling certain model year 2011-2014 Dodge Challenger, Dodge Charger, Chrysler 300, Dodge Durango, and 2012-2014 Jeep Grand Cherokee vehicles. The affected vehicles have electro-hydraulic power steering (EHPS) and are equipped with a 5.7L or a 3.6L engine and a 160, 180 or 220 amp alternator. In the affected vehicles, the alternator may suddenly fail.

**Consequence :** If the alternator fails, the vehicle may stall without warning, increasing the risk of a crash. There is also the possibility that the alternator may short circuit, increasing the risk of a fire.

**Remedy :** Chrysler will notify owners, and dealers will inspect the alternator and depending on the part number, will replace the alternator, if necessary, free of charge. The recall is expected to begin on August 24, 2017. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is T36.

---

**NHTSA Campaign ID :** 17V572000

**Mfg's Report Date :** September 18, 2017

**Component :** SERVICE BRAKES, SERVICE BRAKES, HYDRAULIC

**Potential Number Of Units Affected :** 646,394

**Summary :** Chrysler (FCA US LLC) is recalling certain 2011-2014 Dodge Durango and Jeep Grand Cherokee vehicles. The affected vehicles had brake booster shields installed under a previous campaign to prevent water from entering the brake booster and limiting braking ability. This recall is to verify that the brake booster shield installation was performed properly.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119cca40ab764

USAA Confidential

 MARKET VALUATION REPORT

Owner: Philips, Walker
Claim: 035577689000000001001

# SUPPLEMENTAL INFORMATION

**Consequence :** If the brake booster shield was not installed properly, the vehicle's braking ability may be reduced, increasing the risk of a crash.

**Remedy :** Chrysler will notify owners, and dealers will inspect the brake booster shield, correcting the installation as necessary, free of charge. The recall is expected to begin November 7, 2017. Owners may contact Chrysler customer service at 1-800-853-1403. Chrysler's number for this recall is T59.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca40ab764

USAA Confidential



AlaFile E-Notice

01-CV-2019-904168.00

To:  JONATHAN HIETT WALLER
     jwaller@waller-law.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL
01-CV-2019-904168.00

The following complaint was FILED on 9/16/2019 10:20:00 AM

Notice Date:      9/16/2019 10:20:00 AM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov



AlaFile E-Notice

01-CV-2019-904168.00

To:  GARRISON PROPERTY & CASUALTY INSURANCE
     9800 FREDERICKSBURG ROAD
     SAN ANTONIO, TX, 78288

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL
01-CV-2019-904168.00

The following complaint was FILED on 9/16/2019 10:20:00 AM

Notice Date:     9/16/2019 10:20:00 AM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov



AlaFile E-Notice

01-CV-2019-904168.00

To:  CCC INFORMATION SERVICES, INC.
     222 MERCHANDISE MART PLAZ
     CHICAGO, IL, 60654

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL
01-CV-2019-904168.00

The following complaint was FILED on 9/16/2019 10:20:00 AM

Notice Date:       9/16/2019 10:20:00 AM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 4/2017 | SUMMONS<br>- CIVIL - | Court Case Number<br>01-CV-2019-904168.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL

**NOTICE TO:**  GARRISON PROPERTY & CASUALTY INSURANCE, 9800 FREDERICKSBURG ROAD, SAN ANTONIO, TX 78288
(Name and Address of Defendant)

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), JONATHAN HIETT WALLER
(Name(s) of Attorney(s))

WHOSE ADDRESS(ES) IS/ARE: 2001 PARK PLACE NORTH, SUITE 900, BIRMINGHAM, AL 35203
(Address(es) of Plaintiff(s) or Attorney(s))

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of WALKER T. PHILLIPS pursuant to the Alabama Rules of the Civil Procedure.
[Name(s)]

| 09/16/2019 | /s/ JACQUELINE ANDERSON  SMITH | By: |
|---|---|---|
| (Date) | (Signature of Clerk) | (Name) |

☑ Certified Mail is hereby requested.   /s/ JONATHAN HIETT WALLER
(Plaintiff's/Attorney's Signature)

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____.
(Date)

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,
(Name of Person Served)          (Name of County)

Alabama on _____.
(Date)

| (Type of Process Server) | (Server's Signature) | (Address of Server) |
|---|---|---|
| | (Server's Printed Name) | (Phone Number of Server) |

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>01-CV-2019-904168.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL

**NOTICE TO:** CCC INFORMATION SERVICES, INC., 222 MERCHANDISE MART PLAZ, CHICAGO, IL 60654
<i>(Name and Address of Defendant)</i>

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), JONATHAN HIETT WALLER ,
<i>(Name(s) of Attorney(s))</i>

WHOSE ADDRESS(ES) IS/ARE: 2001 PARK PLACE NORTH, SUITE 900, BIRMINGHAM, AL 35203 .
<i>(Address(es) of Plaintiff(s) or Attorney(s))</i>

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of WALKER T. PHILLIPS pursuant to the Alabama Rules of the Civil Procedure.
<i>[Name(s)]</i>

| 09/16/2019 | /s/ JACQUELINE ANDERSON  SMITH | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.    /s/ JONATHAN HIETT WALLER
<i>(Plaintiff's/Attorney's Signature)</i>

### RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .
<i>(Date)</i>

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____
_____ in _____ County,
<i>(Name of Person Served)</i>          <i>(Name of County)</i>

Alabama on _____ .
<i>(Date)</i>

<br>
<i>(Type of Process Server)</i>     <i>(Server's Signature)</i>     <i>(Address of Server)</i>

<i>(Server's Printed Name)</i>     <i>(Phone Number of Server)</i>



# NOTICE TO CLERK

### REQUIREMENTS FOR COMPLETING SERVICE BY
### CERTIFIED MAIL OR FIRST CLASS MAIL

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL

01-CV-2019-904168.00

To:  CLERK BIRMINGHAM
       clerk.birmingham@alacourt.gov

TOTAL POSTAGE PAID: $32.45

Parties to be served by Certified Mail - Return Receipt Requested

GARRISON PROPERTY & CASUALTY INSURANCE                     Postage: $16.70

9800 FREDERICKSBURG ROAD
SAN ANTONIO, TX 78288

CCC INFORMATION SERVICES, INC.                                      Postage: $15.75

222 MERCHANDISE MART PLAZ
CHICAGO, IL 60654

Parties to be served by Certified Mail - Restricted Delivery - Return Receipt Requested

Parties to be served by First Class Mail

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)       $ _____
☐ Return Receipt (electronic)     $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required        $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7019 1120 0000 6251 0070

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GARRISON PROPERTY & CASUALTY INSURANCE
9800 FREDERICKSBURG ROAD
SAN ANTONIO, TX 78288

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 4837 9032 7988 40

2. Article Number (Transfer from service label)
7019 1120 0000 6251 0070

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

CW19904168 S/O

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053           Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____        Postmark
☐ Certified Mail Restricted Delivery $ _____        Here
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$
Total Postage and Fees
$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CCC INFORMATION SERVICES, INC.
222 MERCHANDISE MART PLAZ
CHICAGO, IL 60654

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 4837 9032 7988 19

2. Article Number *(Transfer from service label)*
7019 1120 0000 6251 0087

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____                      ☐ Agent
                               ☐ Addressee
B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

0W19 9041685 6

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GARRISON PROPERTY & CASUALTY INSURANCE

9800 FREDERICKSBURG ROAD
SAN ANTONIO, TX 78288

9590 9402 4837 9032 7988 40

2. Article Number *(Transfer from service label)*

7019 1120 0000 6251 0070

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

DATAMARK

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    SEP 23 2019    C. Date of Delivery

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:    ☐ No

ERNANDEZ

CW19904168 S/O

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ___ Mail
☐ ___ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt

## USPS TRACKING#



9590 9402 4837 9032 7988 40

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

SEP 26 2019

JACQUELINE ANDERSON SMITH
CLERK

JACQUELINE ANDERSON SMITH, CLERK
ROOM 400 JEFF CO COURTHOUSE
716 RICHARD ARRINGTON JR BLVD., NO.
BIRMINGHAM, ALABAMA 35203





AlaFile E-Notice

01-CV-2019-904168.00

Judge: ROBERT S. VANCE

To: WALLER JONATHAN HIETT
jwaller@waller-law.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL
01-CV-2019-904168.00

The following matter was served on 9/23/2019

**D001 GARRISON PROPERTY & CASUALTY INSURANCE**
**Corresponding To**
CERTIFIED MAIL

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov

## SENDER: COMPLETE THIS SECTION

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CCC INFORMATION SERVICES, INC.

222 MERCHANDISE MART PLAZ

CHICAGO, IL 60654

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 4837 9032 7988 19

2. Article Number (Transfer from service label)

7019 1120 0000 6251 0087

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _Angel Flores_ ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Angel Flores

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No



3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
  Mail
  Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt



USPS TRACKING #

9590 9402 4837 9032 7988 19

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

SEP 30 2019

JACQUELINE ANDERSON SMITH
CLERK

JACQUELINE ANDERSON SMITH, CLERK

ROOM 400 JEFF CO COURTHOUSE

716 RICHARD ARRINGTON JR BLVD., NO.

BIRMINGHAM, ALABAMA 35203



AlaFile E-Notice

01-CV-2019-904168.00

Judge: ROBERT S. VANCE

To: WALLER JONATHAN HIETT
jwaller@waller-law.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

WALKER T. PHILLIPS V. GARRISON PROPERTY & CASUALTY INSURANCE ET AL
01-CV-2019-904168.00

The following matter was served on 9/30/2019

**D002 CCC INFORMATION SERVICES, INC.**

**Corresponding To**

CERTIFIED MAIL

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov